[No. B216753. Second Dist., Div. One. June 1, 2010.]

JOSE A. VALENCIA et al., Plaintiffs and Respondents, v.
PETER MICHAEL SMYTH et al., Defendants and Appellants.

154

COUNSEL

Michael J. Perry for Defendants and Appellants.

Gilbert & Nguyen and Jonathan T. Nguyen for Plaintiffs and Respondents.

OPINION

MALLANO, P. J.—The California Association of Realtors publishes and periodically revises a standard form residential purchase agreement commonly used in California. The agreement contains an arbitration provision. We previously interpreted the October 2000 version of the agreement, concluding that, under the California Arbitration Act (CAA) (Code Civ. Proc., §§ 1280–1294.2), the trial court had the authority to stay or deny arbitration where (1) some of the parties to the action were not parties to the agreement,

and (2) proceedings in different forums—arbitral and judicial—could result in conflicting rulings on a common issue of fact or law. (*Gravillis v. Coldwell Banker Residential Brokerage Co.* (2006) 143 Cal.App.4th 761, 782–783 [49 Cal.Rptr.3d 531] (*Gravillis*), construing Code Civ. Proc., § 1281.2, subd. (c).)

The Federal Arbitration Act (FAA) (9 U.S.C. §§ 1–16) does *not* permit a trial court to stay or deny arbitration in those circumstances. Rather, the FAA requires the arbitration of all claims within the scope of an arbitration provision even if the action includes nonarbitrable claims by or against third parties. (See 9 U.S.C. §§ 3, 4.)

In accordance with choice-of-law principles, the parties may limit the trial court's authority to stay or deny arbitration under the CAA by adopting the more restrictive procedural provisions of the FAA. Here, the question is whether the October 2002 version of the residential purchase agreement (Agreement), unlike the earlier version we interpreted, incorporates the FAA's procedural provisions. The Agreement states, as did its predecessor, that disputes arising out of the Agreement shall be "decided by neutral arbitration as provided by California law," and the arbitrator's decision "shall be rendered in accordance with substantive California Law." The only material difference is the addition of a single sentence: "*Interpretation* of this agreement shall be governed by the [*FAA*]." (Italics added.)

We conclude that, by adopting the FAA for purposes of contract interpretation, the parties did not displace the procedural provisions of the CAA. Both the FAA and the CAA employ the *same* principles of contract interpretation. Thus, regardless of which act governs the interpretation of the Agreement, the result is the same: Under the "plain meaning" rule, the Agreement's choice-of-law provision requires the application of the CAA's procedural provisions. The trial court had the authority under the CAA, which it properly exercised, to deny arbitration and to join all parties in a single action to be adjudicated in court. We therefore affirm.

# I

## BACKGROUND

The facts and allegations in this case are taken from the pleadings and the parties' submissions on the motion to compel arbitration.

### A. *Complaint*

On March 31, 2008, Jose A. Valencia and Maricela Mendoza (plaintiffs) filed this action. An amended complaint (complaint) was filed on June 11, 2008. It alleged as follows.

In June 2006, plaintiffs decided to buy real property in Palmdale, California. They were represented by Blanca Rivera-Letrado (Letrado), a licensed real estate agent. Letrado was employed by Keller Williams Realty. Richard Velasco owned the property. Peter Michael Smyth, a licensed real estate broker, doing business as California Investments, was Velasco's broker and the listing agent on the property.

Letrado and Smyth convinced plaintiffs to offer $949,000 for the property. Velasco accepted the offer. Plaintiffs were unaware that Velasco was in default on his "mortgage" in the amount of $660,000 and that the property was in foreclosure. Plaintiffs made a downpayment of $175,000, which was wired to either Fidelity National Title Company or United Title Company (formerly known as New Century Title Company). Without informing plaintiffs, Velasco transferred ownership of the property to Smyth before the close of escrow. Smyth's wife, Pam, executed interspousal transfer deeds to assist in the transaction. Reliable Trust Deed Services, Inc., became "a Trustee of the Deed of Trust in favor of Smyth." At the time of closing, plaintiffs believed that Velasco was the property owner and that they were buying the property from him.

After escrow closed, plaintiffs regularly deposited funds into a designated bank account to cover the "mortgage," insurance, taxes, and utilities. At some point, plaintiffs learned they had purchased the property from Smyth, not Velasco; they had been depositing funds into the Smyths' personal checking account; and the Smyths, together with others, had misappropriated plaintiffs' funds and used the money to finance other real estate transactions of their own.

In late 2007, Peter Smyth demanded that plaintiffs make additional "mortgage" payments, more than doubling the size of their monthly payment. Plaintiffs refused to make the additional payments, and Smyth initiated foreclosure proceedings.

The complaint named as defendants Peter Smyth, Pam Smyth, Letrado, Keller Williams Realty, United Title Company, Fidelity National Title Company, and Reliable Trust Deed Services, Inc. (collectively defendants). Plaintiffs alleged seven causes of action: fraud, conversion, breach of fiduciary duty, negligence, declaratory and injunctive relief, unfair business practices (Bus. & Prof. Code, §§ 17200–17210), and negligent infliction of emotional distress. They sought damages of at least $1 million.

B. *Default and Discovery*

Plaintiffs had difficulty serving process on the Smyths. Eventually, service was made by publication. The deadline for a responsive pleading passed.

Defaults were entered. Shortly thereafter, the Smyths discovered they were in default. By stipulation dated December 2, 2008, the parties set aside the defaults, and the Smyths' answer was filed.

Defendants took plaintiffs' depositions over a four-day period. Plaintiffs produced more than 700 pages of documents in response to discovery requests.

## C. *Motion to Compel Arbitration*

On March 17, 2009, the Smyths filed a motion to compel arbitration, relying on the arbitration provision in the Agreement, a standard form residential purchase agreement published by the California Association of Realtors. The Agreement, revised in October 2002, indicated that plaintiffs were the buyers, and Velasco was the seller. It identified the real estate agents and brokers by name. The arbitration provision stated:

"17. DISPUTE RESOLUTION:

"A. MEDIATION: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. . . .

"B. ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or Equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration . . . . *The arbitrator* shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who *shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure § 1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure*. Judgment upon the award of the arbitrator(s) may be entered [in] any court having jurisdiction. *Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act*. [¶] . . . [¶]

" 'NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE *ANY DISPUTE* ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION *DE-CIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW* AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL.

BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, *YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE*. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.'

" 'WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.' " (Italics & boldface added.)

Plaintiffs initialed the spaces for the buyers. Velasco initialed as the seller.

In support of the motion to compel arbitration, Peter Smyth asserted that, as the owner and seller of the property, he was Velasco's assignee and could enforce the arbitration provision. Pam Smyth argued that, because she had been a joint owner of the property with her husband, she could enforce the arbitration provision as a third party beneficiary. Together, the Smyths argued they had not waived their right to arbitration by delaying the motion to compel or by engaging in discovery. They also contended the trial court had no authority to stay or deny arbitration under the CAA because the Agreement adopted the FAA's procedural provisions.

Plaintiffs opposed the motion to compel, arguing the Smyths had waived any right to arbitration by delay in seeking arbitration and by participating in discovery. Plaintiffs also argued the Smyths were not parties to the Agreement and thus could not invoke the arbitration provision, and, in any event, the trial court should stay or deny arbitration under the CAA and consolidate all of the claims, arbitrable and nonarbitrable, for determination in court. Plaintiffs requested a stay or denial of arbitration pursuant to Code of Civil Procedure section 1281.2, subdivision (c) (hereafter section 1281.2(c)), which provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy . . . , the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] (c) A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. . . . [¶] . . . [¶] If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third

party . . . , the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2(c); all undesignated section references are to the Code of Civil Procedure.)

### D. *Trial Court's Ruling*

The motion was heard on April 14, 2009. After argument, the trial court continued the hearing to allow the parties an opportunity to discuss settlement. The case did not settle. On May 18, 2009, the trial court denied the motion and issued a final order. The order recited that Peter Smyth could enforce the arbitration provision as Velasco's assignee; Pam Smyth had no standing to seek arbitration; and Peter Smyth had waived any right to arbitration by delay in bringing the motion and by participating in discovery. The trial court also invoked its authority under section 1281.2(c), denying arbitration and joining all parties in a single action to be adjudicated in court.

The Smyths appealed.

## II

## DISCUSSION

The Smyths contend (1) the trial court erred by finding they had waived their right to arbitration, and (2) the trial court lacked the authority to deny arbitration under section 1281.2(c) because the parties had adopted the procedural provisions of the FAA. In addition, Pam Smyth argues she had standing to invoke the Agreement's arbitration provision.

Based on the plain meaning of the arbitration provision, we conclude the parties agreed that the CAA, not the FAA, would govern the arbitration. Further, the trial court did not abuse its discretion in denying arbitration given the possibility of conflicting rulings if the claims against the Smyths had been arbitrated and the claims against the remaining defendants had been adjudicated in court. Because we conclude the trial court properly denied the motion to compel arbitration under section 1281.2(c), we do not address the Smyths' other contentions.

### A. *Standard of Review*

The question of whether the Agreement incorporated the FAA's procedural provisions, thereby eliminating the trial court's authority under section

1281.2(c), "is a question of law involving interpretation of statutes and the contract (with no extrinsic evidence). We therefore apply a de novo standard of review." (*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110, 1117 [39 Cal.Rptr.3d 437] (*Rodriguez*).) The question of whether the trial court properly denied arbitration under section 1281.2(c) is reviewed for an abuse of discretion. (See *Rodriguez*, at p. 1116; *Best Interiors, Inc. v. Millie & Severson, Inc.* (2008) 161 Cal.App.4th 1320, 1329 [75 Cal.Rptr.3d 1].)

■ We interpret the Agreement and section 1281.2(c) in light of their plain meaning. (See *Zakarian v. Bekov* (2002) 98 Cal.App.4th 316, 325 [119 Cal.Rptr.2d 623]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 29 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Under the plain meaning rule, courts give the words of the contract or statute their usual and ordinary meaning. (See *Lehman v. Superior Court* (2006) 145 Cal.App.4th 109, 115 [51 Cal.Rptr.3d 411].) "[W]e interpret the words in their ordinary sense, according to the plain meaning a layperson would attach to them." (*Gravillis, supra,* 143 Cal.App.4th at pp. 774–775.)

B. *Arbitration and Choice of Law*

In a series of cases, the United States Supreme Court, the California Supreme Court, and the California Courts of Appeal have discussed whether and when the FAA's procedural provisions apply in state court.

1. *Volt*

In *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468 [103 L.Ed.2d 488, 109 S.Ct. 1248] (*Volt*), Stanford University filed suit against a construction contractor and two other companies in California superior court. The contractor responded with a motion to compel arbitration. The agreement between Stanford and the contractor involved interstate commerce, making it subject to the FAA. (See 9 U.S.C. § 2; *Volt*, at pp. 471–472, 476.) There was no arbitration agreement between Stanford and the other two companies.

The motion was brought pursuant to both the CAA and the FAA. (*Volt, supra,* 489 U.S. at p. 471, fn. 2; see Code Civ. Proc., § 1281.2; 9 U.S.C. § 4.) The contract required the arbitration of " '[a]ll claims, disputes and other matters in question between the parties to this contract, arising out of or relating to this contract or the breach thereof . . . .' " (*Volt*, at p. 470, fn. 1.) A choice-of-law provision stated, " '[T]he Contract shall be governed by the law of the place where the Project is located,' " namely, California. (*Id.* at pp. 470, 472, 474, 476.) Stanford moved to stay the arbitration under section 1281.2(c) on the ground that the claims against two of the defendants were not arbitrable.

The superior court denied the contractor's motion to compel and granted Stanford's motion to stay the arbitration pending the outcome of the litigation. The Court of Appeal affirmed, concluding the choice-of-law provision incorporated the CAA's procedural provisions into the contract. The United States Supreme Court agreed, stating: "[W]e do not think the Court of Appeal offended [federal law] by interpreting the choice-of-law provision to mean that the parties intended the California rules of arbitration, including the § 1281.2(c) stay provision, to apply to their arbitration agreement. There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration—rules which are manifestly designed to encourage resort to the arbitral process—simply does not . . . offend any . . . policy embodied in the FAA." (*Volt, supra*, 489 U.S. at p. 476.) "[W]e think the California arbitration rules which the parties have incorporated into their contract generally foster the federal policy favoring arbitration. . . . [T]he FAA itself contains no provision designed to deal with the special practical problems that arise in multiparty contractual disputes when some or all of the contracts at issue include agreements to arbitrate. California has taken the lead in fashioning a legislative response to this problem, by giving courts authority to consolidate or stay arbitration proceedings in these situations in order to minimize the potential for contradictory judgments. See Calif. Civ. Proc. Code Ann. § 1281.2(c)." (*Volt*, at p. 476, fn. 5.)

*Volt* continued: "The question remains whether . . . application of Cal. Civ. Proc. Code Ann. § 1281.2(c) is nonetheless pre-empted by the FAA to the extent it is used to stay arbitration under this contract involving interstate commerce. It is undisputed that this contract falls within the coverage of the FAA, since it involves interstate commerce, and that the FAA contains no provision authorizing a stay of arbitration in this situation." (*Volt, supra*, 489 U.S. at p. 476.) "[W]e have held that the FAA pre-empts state laws which 'require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' . . . But it does not follow that the FAA prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. . . . [S]uch a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, . . . so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is

fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to 'rigorously enforce' such agreements according to their terms, . . . we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind by the FAA." (*Volt, supra,* 489 U.S. at pp. 478–479, citations omitted.)

*Volt* declined to decide whether the procedural provisions of the FAA were intended to apply only in federal court, saying: "While the argument [favoring that limitation] is not without some merit, we need not resolve it to decide this case, for we conclude that even if [the procedural provisions] of the FAA are fully applicable in state-court proceedings, they do not prevent application of Cal. Civ. Proc. Code Ann. § 1281.2(c) to stay arbitration where, as here, the parties have agreed to arbitrate in accordance with California law." (*Volt, supra,* 489 U.S. at p. 477, fn. omitted.) Thus, *Volt* left open the question of whether, in a case involving interstate commerce, the FAA's procedural provisions would apply in state court absent a choice-of-law provision incorporating state law.

### 2. *Rosenthal*

That question was before our Supreme Court in *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394 [58 Cal.Rptr.2d 875, 926 P.2d 1061] (*Rosenthal*). There, several investors sued their broker and its representatives, alleging the defendants had falsely told them their investments were protected against a loss of principal. The defendants petitioned the trial court to compel arbitration pursuant to the client agreements. Those agreements did not have a choice-of-law clause but did involve interstate commerce. The plaintiffs contended the client agreements were not enforceable on grounds of fraud and sought a jury trial under section 4 of the FAA (9 U.S.C. § 4) to determine the agreements' validity.

Section 4 of the FAA (9 U.S.C. § 4) provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any *United States district court* which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue,

the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, *the party alleged to be in default may*, except in cases of admiralty, . . . *demand a jury trial of such issue,* and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the *Federal Rules of Civil Procedure*, or may specially call a jury for that purpose. . . ." (Italics added.)

In *Rosenthal, supra,* 14 Cal.4th 394, the trial court concluded the FAA's jury trial provision did not apply in state court. The Court of Appeal reversed. The Supreme Court agreed with the trial court, stating: "[B]ecause the transactions here involved interstate commerce, questions concerning arbitrability of the parties' dispute are governed by the [FAA]. . . . The primary *substantive* provision of the [FAA] is *section 2,* which provides: 'A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' (9 U.S.C. § 2.)

" 'Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA].' . . . The rule of enforceability established by section 2 of the [FAA] preempts any contrary state law and is binding on state courts as well as federal. . . .

"The policy of enforceability stated in section 2 of the [FAA] is implemented in the remaining sections of the [act], especially sections 3 and 4, which concern attempts to resist arbitration or to litigate an issue subject to arbitration. Section 3 requires any court 'of the United States' to grant a party's request for a stay of litigation on an arbitrable issue, pending completion of the arbitration. (9 U.S.C. § 3.) Section 4 requires a 'United States district court' to entertain an application to compel arbitration. (9 U.S.C. § 4.) . . . The court is to order arbitration if satisfied 'that the making of the agreement for arbitration or the failure to comply therewith is not in issue.' If such an issue *is* presented, the court is to 'proceed summarily to the trial thereof.' . . . Despite the summary nature of the proceeding [under section 4], the party resisting arbitration may demand a jury trial on issues of the existence of the arbitration agreement or the party's default thereunder. . . .

". . . Code of Civil Procedure section 1281.2 . . . , like the [FAA's] section 4, provides a procedure by which a party may petition the court to order

arbitration of a controversy. Under section 1281.2, as under section 4 of the [FAA], the court may deny the application if it finds the party resisting arbitration did not in fact agree to arbitrate. . . . In one important respect, however, section 1281.2 differs from section 4 of the [FAA]: The California statute does not provide for a jury trial of issues as to the making of the arbitration agreement or the resisting party's default thereunder. Instead, our statutory scheme requires petitions to compel arbitration to be determined 'in the manner . . . provided by law for the making and hearing of motions.' (Code Civ. Proc., § 1290.2 . . . .)

"The question thus arises whether section 4 of the [FAA], or sections 1281.2 and 1290.2 [of the CAA], provide the *procedure* to be followed in a California court in a case where the [FAA] governs arbitrability of the controversy. . . . In light both of the specific language of the [FAA] and of general principles of federal preemption, we conclude the [FAA] does not require California courts to hold a jury trial on the existence of an arbitration agreement. . . .

"Section 4 of the [FAA] does not explicitly govern the *procedures* to be used in *state* courts. . . . [T]he statute contemplates a petition in 'United States district court,' and provides that certain steps are to be taken 'in the manner provided by the Federal Rules of Civil Procedure.' This language has led the United States Supreme Court to express its doubt that section 4 is applicable in state courts. . . . [¶] . . . [¶]

"The question whether a jury trial is called for . . . requires us to go beyond the language of section 4 of the [FAA] and apply broader principles of federal preemption. It is a 'general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts,' even when the controversy is governed by substantive federal law. . . . 'By the same token, however, where state courts entertain a federally created cause of action, the "federal right cannot be defeated by the forms of local practice." ' . . .

"Like other federal procedural rules, therefore, 'the *procedural provisions of the [FAA] are not binding on state courts* . . . provided applicable *state procedures* do not defeat the rights granted by Congress.' . . . We think it plain the *California procedures* for a summary determination of the petition to compel arbitration serve to further, rather than defeat, the enforceability policy of the [FAA]. Sections 1281.2 and 1290.2 are neutral as between state and federal law claims for enforcement of arbitration agreements. They display no hostility to arbitration as an alternative to litigation; to the contrary, the summary procedure provided, in which the existence and validity of the arbitration agreement is decided by the court in the manner of

a motion, is designed to further the use of private arbitration as a means of resolving disputes more quickly and less expensively than through litigation. . . . Because the California procedure for deciding motions to compel serves to further, rather than defeat, full and uniform effectuation of the federal law's objectives, the California law, rather than section 4 of the [FAA], is to be followed in California courts." (*Rosenthal, supra,* 14 Cal.4th at pp. 405–410, citations & fns. omitted, italics added & omitted.)

"[P]laintiffs maintain the use of a motion procedure to decide the petition to compel arbitration violates the [FAA] because it constitutes a special rule for arbitration agreements, not applicable to contracts generally. . . . [S]ection 2 of the [FAA], where applicable, precludes states from 'singling out arbitration provisions for suspect status, requiring instead that such provisions be placed "upon the same footing as other contracts." ' . . . Thus, a substantive state law rule may be applied to agreements subject to the [FAA] only if the state law 'arose to govern issues concerning the validity, revocability and enforceability of contracts generally.' . . . Contrary to plaintiffs' claim, however, nothing in the California procedures violates this principle. Sections 1281.2 and 1290.2 establish no special rule of nonenforceability applicable only to arbitration agreements. Nor do the California procedures place arbitration agreements at a disadvantage compared to other contracts, or single them out for suspect status. Our statutes do establish procedures for determining enforceability not applicable to contracts generally, but they do not thereby run afoul of the [FAA's] section 2, which states the principle of equal enforceability, but does not dictate the procedures for determining enforceability." (*Rosenthal, supra,* 14 Cal.4th at p. 410, citations omitted.)

### 3. *Mount Diablo*

In *Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711 [124 Cal.Rptr.2d 607] (*Mount Diablo*), the Court of Appeal held that a "generic" choice-of-law provision, requiring the application of California law, was sufficient to avoid the FAA's procedural provisions even though the parties' contract involved interstate commerce. (See 101 Cal.App.4th at pp. 716, 717, fn. 5, 722.) In *Mount Diablo*, the plaintiff sued three defendants, one of which, Health Net, had entered into a contract with the plaintiff containing an arbitration clause. The contract also contained a choice-of-law provision, stating: " 'The validity, construction, interpretation and enforcement of this Agreement shall be governed by the laws of the State of California.' " (*Id.* at p. 716.) Health Net petitioned the trial court to compel arbitration. The plaintiff argued that, because the claims against the other two defendants were not subject to arbitration, the trial court should deny arbitration given the potential for conflicting rulings if the controversy were

adjudicated in two forums. The trial court denied the petition and exercised its authority under section 1281.2(c), refusing to enforce the arbitration clause.

On appeal, Health Net asserted the FAA's procedural provisions were applicable because (1) the contract involved interstate commerce, and (2) the choice-of-law provision made no reference to arbitration. The Court of Appeal rejected that assertion, saying: "The choice-of-law provision in the present case may be 'generic' in the sense that it does not mention arbitration or any other specific issue that might become a subject of controversy, but it is nonetheless broad, unqualified and all-encompassing. It provides that '[t]he validity, construction, interpretation and enforcement of this Agreement' shall be governed by California law. The explicit reference to enforcement reasonably includes such matters as whether proceedings to enforce the agreement shall occur in court or before an arbitrator. Chapter 2 (in which § 1281.2 appears) of title 9 of part III of the California Code of Civil Procedure is captioned 'Enforcement of Arbitration Agreements.' An interpretation of the choice-of-law provision to exclude reference to this chapter would be strained at best." (*Mount Diablo, supra,* 101 Cal.App.4th at p. 722.)

■ The *Mount Diablo* court also discussed whether section 1281.2(c) was inconsistent with the FAA's primary goal of ensuring that arbitration agreements are enforced according to their terms: "Section 1281.2(c) is not a provision designed to limit the rights of parties who choose to arbitrate or otherwise to discourage the use of arbitration. Rather, it is part of California's statutory scheme designed to enforce the parties' arbitration agreements, as the FAA requires. Section 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement. The California provision giving the court discretion not to enforce the arbitration agreement under such circumstances—in order to avoid potential inconsistency in outcome as well as duplication of effort—does not contravene the letter or the spirit of the FAA. . . . Thus, there is no reason why the broad language of the choice-of-law clause in this case, calling for the enforcement of the agreement under California law, should not be read to invoke the provisions of section 1281.2(c)." (*Mount Diablo, supra,* 101 Cal.App.4th at p. 726.)

### 4. *Cronus*

In *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376 [25 Cal.Rptr.3d 540, 107 P.3d 217] (*Cronus*), the parties' contract required the arbitration of any dispute " 'arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement.' " (*Id.* at p. 381, fn. 3.) A choice-of-law clause provided, " '[T]his agreement shall be

construed and enforced in accordance with and governed by the laws of the State of California . . . ,' " thereby applying the CAA's procedural provisions, including section 1281.2(c). (*Cronus*, at pp. 381, 387.) Another choice-of-law clause stated that " '[t]he designation of a situs or specifically a governing law for this agreement or the arbitration shall not be deemed an election to preclude application of the *[FAA], if it would be applicable.*' " (*Id.* at p. 381, fn. 3, italics added.) The parties did not dispute that their contract involved interstate commerce, such that it fell within the coverage of the FAA. (35 Cal.4th at p. 384.) In response to a petition to compel arbitration, the trial court relied on section 1281.2(c), staying the arbitration and consolidating the arbitrable claims with the civil action " 'for all purposes.' " (*Cronus*, at p. 382.) The question before the Supreme Court was whether the FAA preempted section 1281.2(c) in light of the choice-of-law language referencing the application of the FAA *if it would be applicable.*

For several reasons, the Supreme Court concluded the FAA did not preempt section 1281.2(c). First, the court examined the language and legislative history of the FAA's procedural provisions, observing: "The language used in sections 3 and 4 [(9 U.S.C. §§ 3, 4)] and the legislative history of the FAA suggest that the sections were intended to apply only in federal court proceedings." (*Cronus, supra*, 35 Cal.4th at p. 388.) Second, "the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings." (*Id.* at p. 389.) Third, after analyzing *Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 217–221 [84 L.Ed.2d 158, 105 S.Ct. 1238] and *Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 19–21 [74 L.Ed.2d 765, 103 S.Ct. 927]— both of which restricted the authority of *federal* courts to stay or deny arbitration under the FAA—the *Cronus* court noted, "*Byrd* and *Moses H. Cone* do not address the appropriate procedure in *state* courts." (*Cronus, supra*, at p. 391, italics added.) Fourth, the court in *Cronus* concluded section 1281.2(c) would not undermine the objectives of the FAA because "section 1281.2(c) is *not* a special rule limiting the authority of arbitrators. It is an evenhanded law that allows the trial court to stay arbitration proceedings while the concurrent lawsuit proceeds *or* stay the lawsuit while arbitration proceeds to avoid conflicting rulings on common issues of fact and law amongst interrelated parties." (*Cronus, supra*, at p. 393.)

In closing, *Cronus* commented: "Our opinion does not preclude parties to an arbitration agreement [from] *expressly* designat[ing] that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law. We simply hold that the language of the arbitration clause in this case, calling for the application of the FAA 'if it would be applicable,' should not be read to preclude the application of 1281.2(c), because *it does not conflict with the applicable provisions of the*

FAA and does not undermine or frustrate the FAA's substantive policy favoring arbitration." (*Cronus, supra*, 35 Cal.4th at p. 394.)

### 5. *Rodriguez*

In *Rodriguez, supra*, 136 Cal.App.4th 1110, the parties' agreement contained an arbitration clause stating: " 'Pursuant to the Federal Arbitration Act, any controversy or claim arising [out] of or related to this Agreement or the breach of any provision thereof shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association . . . .' " (*Id.* at p. 1116.) The defendant moved to compel arbitration of a claim within the scope of the arbitration clause. The plaintiff did not dispute that the contract involved interstate commerce. (*Id.* at p. 1117 & fn. 4.) The trial court denied the motion based on section 1281.2(c), rejecting the argument that the FAA's procedural provisions applied.

The Court of Appeal reversed, stating: "The contract specifies that claims shall be arbitrated 'pursuant to the FAA.' In common understanding, the phrase 'pursuant to' means 'in conformance to or agreement with' and 'according to.' . . . Plainly, the language of the contract requires the parties to arbitrate 'in conformance to' and 'agreement with' the FAA. There is *no* other contract provision suggesting the parties intended to incorporate California arbitration law, nor is there any language suggesting the parties intended to arbitrate 'in conformance to' some provisions of the FAA but not others. The phrase 'pursuant to the FAA' is broad and unconditional, unlike the *Cronus* clause, which deferred to the contract's California choice-of-law provision by invoking only 'applicable' provisions of the FAA. . . .

". . . [T]here is no ambiguity regarding the parties' intent. They adopted the FAA—all of it—to govern their arbitration. The FAA controls, including section 3 which requires the court to stay the judicial proceeding and compel arbitration. Although section 3 may not generally apply to state courts, here the parties did as *Cronus* suggested they could: They expressly designated *their* arbitration proceeding 'should move forward under the FAA's procedural provisions rather than under state procedural law.' . . .

"Thus, the [trial] court erred by denying [the defendant's] motion to compel arbitration and stay the court proceeding as to plaintiffs and [the defendant]. . . . While we may question the wisdom of the parties' choice, and decry the potential for inefficiency, delay, and conflicting rulings, the parties were free to choose their arbitration rules. The court will not rewrite their contract." (*Rodriguez, supra*, 136 Cal.App.4th at p. 1122, citations omitted.)

### 6. *Warren-Guthrie*

In *Warren-Guthrie v. Health Net* (2000) 84 Cal.App.4th 804 [101 Cal.Rptr.2d 260] (*Warren-Guthrie*), disapproved on another point in *Cronus, supra,* 35 Cal.4th at page 393, footnote 8, the parties' contract contained a choice-of-law provision stating: " 'All Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280.' " (*Warren-Guthrie,* at p. 815.) The contract also involved interstate commerce, making it subject to the FAA. (See *Warren-Guthrie,* at pp. 810–811.) The defendant moved to compel arbitration of all claims in the complaint. The trial court denied the motion, relying on section 1281.2(c). The Court of Appeal reversed, explaining: "[The choice-of-law] provision[] . . . require[s] California contractual arbitration law to apply to the manner in which the arbitration shall be conducted. There is no express language indicating that California law shall be determinative as to whether or not arbitration is required. Unlike in *Volt,* [*supra,* 489 U.S. 468,] the parties did not agree that California law shall apply for all purposes. Rather, the agreement limits application of California law to California contractual arbitration law, and further limits the scope of California law to that law pertaining to the manner in which the arbitration is to be conducted. The key [contract] provision states: 'All Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280.' The key term is 'conducted,' which is defined . . . as, 'To manage; direct; lead; have direction; carry on; regulate; do business.' . . .

"We conclude the [contract] is sufficiently clear in stating that arbitration is required. No other exception is specified. Agreement to apply California contractual arbitration law is expressly limited to that law which bears on how the arbitration shall be conducted, as distinguished from agreeing that the [contract] shall be governed by California law for all purposes, including the determination as whether or not arbitration is required. There being no such express language to the contrary, and in light of the overriding state and federal policy of enforcing privately negotiated agreements to arbitrate in accordance with their terms . . . , we conclude the [contract's] limited choice of law provision does not allow nonarbitration based on the section 1281.2(c) exception to arbitration. . . . Hence, under the FAA, the trial court erred in relying on section 1281.2(c) in denying [the] motion to compel arbitration." (*Warren-Guthrie, supra,* 84 Cal.App.4th at pp. 815–816, citations & fn. omitted.)

### 7. *DIRECTV*

More recently, in *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334 [82 Cal.Rptr.3d 229, 190 P.3d 586] (*DIRECTV*), our Supreme

Court addressed whether, under the CAA, the parties may, by agreement, expand judicial review of an arbitration award to include legal error. The United States Supreme Court had decided that issue under the FAA in *Hall Street Associates, L.L.C. v. Mattel, Inc.* (2008) 552 U.S. 576 [170 L.Ed.2d 254, 128 S.Ct. 1396] (*Hall Street*), concluding that the sections of the FAA governing judicial review (9 U.S.C. §§ 10–11) did not permit the parties to expand the scope of review by agreement. (*Hall Street*, at pp. 586–587.)

In *DIRECTV*, the parties were required to arbitrate any " 'claim arising out of the interpretation, performance, or breach of this Agreement.' " (*DIRECTV, supra*, 44 Cal.4th at p. 1341, fn. 3.) The arbitration provision also stated: " 'The parties acknowledge that the transactions contemplated by this Agreement involve commerce, as defined in [the FAA].' " (*Id.* at p. 1342, fn. 3.)

The agreement contained two choice-of-law provisions, one for substantive law and one for procedural law. The former stated: " 'The arbitrators shall apply *California substantive* law to the proceeding, *except* to the extent *Federal substantive* law would apply to any claim.' " (*Id.* at p. 1341, fn. 3, italics added.)

The parties disagreed about the meaning of the *procedural* choice-of-law clause, which read: " '[A]ny arbitration conducted hereunder shall be governed by the [FAA].' " (*DIRECTV, supra*, 44 Cal.4th at p. 1342, fn. 3.) One side argued the clause required the application of the FAA's procedural provisions, including *Hall Street*'s strict limitations on judicial review. The other side, namely DIRECTV, Inc., contended "the FAA provisions governing judicial review are specific to *federal* courts; . . . and . . . the [clause] calls only for the *arbitration itself* to be governed by the [FAA], *not postarbitration* proceedings in court." (*DIRECTV, supra*, 44 Cal.4th at pp. 1350–1351, fn. 12, italics added.) The Supreme Court concluded: "DIRECTV has the better argument. Sections 10 and 11 of the FAA refer to review by 'the United States court in and for the district where the award was made.' (9 U.S.C. §§ 10(a), 11.) The parties' contract did not specify whether enforcement proceedings were to be brought in state or federal court . . . .' " (*DIRECTV*, at p. 1351, fn. 12.)

The enforcement proceedings in *DIRECTV* were brought in superior court, thus raising the question of whether the FAA's provisions governing judicial review (9 U.S.C. §§ 10–11) applied in state court. On that point, our Supreme Court explained: "Section 2 of the FAA, declaring the enforceability of arbitration agreements, 'create[s] a body of federal *substantive* law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.' . . . The FAA governs agreements in contracts involving interstate commerce, like those in this case. . . . The United States Supreme Court has frequently held that state laws invalidating arbitration agreements on grounds

applicable only to arbitration provisions contravene the policy of enforceability established by section 2 of the FAA, and are therefore preempted. . . .

"However, 'the United States Supreme Court does not read the FAA's *procedural* provisions to apply to *state* court proceedings.' . . . Sections 3 and 4 of the FAA, governing stays of litigation and petitions to enforce arbitration agreements, do not apply in *state* court. . . . As we have noted, the provisions for judicial review of arbitration awards in sections 10 and 11 of the FAA are directed to 'the United States court in and for the district wherein the award was made.' . . . We have held that similar language in sections 3 and 4 of the FAA reflects Congress's intent to limit the application of those provisions to federal courts. [¶] . . . [¶]

". . . [A]s in *Cronus* and *Rosenthal*, the FAA's *procedural* provisions are not controlling, and the determinative question is whether CAA procedures conflict with the FAA policy favoring the enforcement of arbitration agreements." (*DIRECTV, supra*, 44 Cal.4th at pp. 1350–1352, citations omitted, italics added.)

*DIRECTV* found no conflict: "[T]he terms of the parties' agreement [prevail] over considerations of expediency in the dispute resolution process. 'After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes . . . , but to ensure that commercial arbitration agreements, like other contracts, " 'are enforced according to their terms,' " . . . and according to the intentions of the parties . . . .' . . . The court has viewed the federal policy served by the FAA as 'at bottom a policy guaranteeing the enforcement of private contractual arrangements.' . . . [¶] . . . [¶]

"We conclude that the *Hall Street* holding is restricted to proceedings to review arbitration awards under the FAA, and does not require state law to conform with its limitations. Furthermore, a reading of the CAA that permits the enforcement of agreements for merits review is fully consistent with the FAA 'policy guaranteeing the enforcement of private contractual arrangements.' " (*DIRECTV, supra*, 44 Cal.4th at pp. 1353–1354, citations omitted.)

*DIRECTV* went on to hold that, under the CAA, parties may expand the scope of review to include errors of law if the agreement explicitly and unambiguously provides for review on the merits. (*DIRECTV, supra*, 44 Cal.4th at pp. 1355, 1361.)

### 8. *Rosenthal-Cronus-DIRECTV* Trilogy

A trilogy of cases, *Rosenthal, Cronus*, and *DIRECTV*, recognizes that if a contract involves interstate commerce, the FAA's *substantive* provision

(9 U.S.C. § 2) applies to the arbitration. But the FAA's *procedural* provisions (9 U.S.C. §§ 3, 4, 10, 11) do not apply unless the contract contains a choice-of-law clause expressly incorporating them. In *Rosenthal, supra,* 14 Cal.4th 394, the parties' contract involved interstate commerce, making the FAA's substantive provision (9 U.S.C. § 2) applicable, but the contract did not contain a choice-of-law clause. The court concluded the FAA's procedural provision requiring a jury trial (9 U.S.C. § 4) did not apply in state court and instead the CAA's procedural provisions—mandating the use of law and motion procedures—governed. (See Code Civ. Proc., §§ 1281.2, 1290.2.) As *Rosenthal* noted: "It is a 'general and unassailable proposition . . . that *States* may establish the *rules of procedure* governing litigation in their *own courts,*' even when the controversy is governed by *substantive federal law.*" (*Rosenthal, supra,* 14 Cal.4th at p. 409, italics added.)

In *Cronus, supra,* 35 Cal.4th 376, the FAA's substantive provision (9 U.S.C. § 2) applied because the contract involved interstate commerce. The contract contained a choice-of-law clause as to procedural matters, stating " '[t]he designation of . . . a governing law for this agreement or the arbitration shall *not* be deemed an election to preclude application of the *[FAA], if it would be applicable.*' " (*Cronus, supra,* at p. 381 & fn. 3, italics added.) The court concluded this language permitted the application of the CAA's procedural provisions, specifically, section 1281.2(c). In reaching that conclusion, the court observed the FAA's procedural provisions were intended to apply only in federal court proceedings. (*Cronus,* at pp. 388–389, 391.)

And in *DIRECTV, supra,* 44 Cal.4th 1334, the contract involved interstate commerce, so the FAA's substantive provision (9 U.S.C. § 2) applied. A choice-of-law clause concerning procedural matters stated: " '[A]ny arbitration conducted hereunder shall be governed by the [FAA].' " (*DIRECTV,* at p. 1342, fn. 3.) The court concluded this language did not make the FAA's sections on judicial review (9 U.S.C. §§ 10, 11) applicable in state court. (*DIRECTV,* at pp. 1350–1351, fn. 12.) Indeed, the court stated that the language of *several* of the FAA's procedural sections "reflects Congress's intent to limit the application of those provisions to federal courts." (*DIRECTV,* at p. 1351, citing 9 U.S.C. §§ 3, 4, 10, 11; see also *DIRECTV,* at pp. 1351–1352.) Thus, the procedural provisions of the CAA apply in *California* courts by default. "There is *no federal policy* favoring arbitration under a *certain set of procedural rules* . . . ." (*Volt, supra,* 489 U.S. at p. 476, italics added.) But the parties may *"expressly* designate that any arbitration proceeding [may] move forward under the FAA's procedural provisions rather than under state procedural law." (*Cronus, supra,* 35 Cal.4th at p. 394, original italics.) Absent such an express designation, however, the FAA's procedural provisions do not apply in state court. (Cf. *Security Ins. Co. of Hartford v. TIG Ins. Co.* (2d Cir. 2004) 360 F.3d 322, 323, fn. 2, 327–329 [where arbitration agreement stated it was governed by California law,

CAA's procedural provisions applied, including § 1281.2(c), permitting a stay of arbitration in federal district court pending outcome of litigation involving third parties].)

C. *The Present Agreement*

In *Gravillis, supra,* 143 Cal.App.4th 761, the plaintiffs purchased a house using the standard form residential purchase agreement published and revised by the California Association of Realtors in October 2000. While the house was being remodeled, the plaintiffs first learned the house was structurally unsound at the time of purchase. They sued their brokers, the seller, the seller's brokers, the termite inspection company, and the company's owner, alleging the defendants had failed to disclose material facts about the condition of the property. The plaintiffs also alleged that the nondisclosure had caused them to suffer emotional distress. The brokers filed a motion to compel arbitration, relying on the arbitration provision in the purchase agreement. The plaintiffs opposed the motion, arguing that (1) their claims came within a "bodily injury" exclusion in the arbitration provision, and (2) arbitration should be stayed or denied under section 1281.2(c) because the termite inspection company and its owner were not parties to the agreement, thereby creating the possibility of conflicting rulings if some of the claims were arbitrated. The trial court denied the motion on the ground that the plaintiffs' claims fell within the bodily injury exclusion.

On appeal, we held that the bodily injury exclusion did not apply to claims alleging emotional distress and that, on remand, the motion to compel arbitration should be granted unless the trial court determined that a stay or denial of arbitration was appropriate under section 1281.2(c). (See *Gravillis, supra,* 143 Cal.App.4th at pp. 773–784.) We also concluded the parties had adopted the CAA's procedural provisions, explaining: "[T]he contracting parties agreed that California law would govern the arbitration provision. The Agreement states: 'By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the "Arbitration of Disputes" provision decided by neutral arbitration *as provided by California law* . . . . If you refuse to submit to arbitration after agreeing to this provision, *you may be compelled to arbitrate* under the authority of the *California Code of Civil Procedure.*' . . . The CAA, which contains section 1281.2(c), is found in the Code of Civil Procedure. [¶] . . . [T]he Agreement [therefore] provides that a motion to compel arbitration is to be decided under California law . . . ." (*Gravillis, supra,* 143 Cal.App.4th at p. 784, original italics, fn. omitted.)

In the present case, the Agreement includes the language we cited in *Gravillis* for the proposition that the parties had adopted the CAA's procedural provisions. But the Agreement also contains additional language that

did not appear in the *Gravillis* agreement. The question on appeal therefore becomes whether this additional language warrants a different conclusion than the one we reached in *Gravillis*. The answer is no because the CAA and the FAA employ the same rules of contract interpretation.

The Agreement contains the following additional language, consisting of two sentences: "The parties shall have the right to discovery in accordance with California Code of Civil Procedure § 1283.05. . . . Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act."

The first sentence, which pertains to the right to discovery under the CAA, is simply a more specific reference to one of the CAA's procedural provisions. (See § 1283.1, subds. (a), (b) [if dispute does not involve injury or death of a person, § 1283.05, governing discovery, is not conclusively deemed part of arbitration agreement, and parties must incorporate § 1283.05 into agreement].) The second sentence, requiring the Agreement to be interpreted in accordance with the FAA, merits closer attention.

The rules of contract interpretation employed under the FAA are the same as those used under the CAA. For example, under the FAA, courts interpret arbitration agreements using the plain meaning rule. (See, e.g., *Lambert v. Austin Ind.* (11th Cir. 2008) 544 F.3d 1192, 1199; *Intern. Broth. of Elec. Workers v. Illinois Bell Tele.* (7th Cir. 2007) 491 F.3d 685, 688; *O'Neil v. Hilton Head Hosp.* (4th Cir. 1997) 115 F.3d 272, 275; *Raytheon v. National Union Fire Ins. of Pittsburgh* (S.D.N.Y. 2004) 306 F.Supp.2d 346, 356–358.) We have employed that rule here. To take another example, under the FAA, " 'the strong federal policy favoring arbitration agreements . . . requires [courts] to resolve any doubts concerning arbitrability in favor of arbitration . . . .' " (*Rivera-Domenech v. Calvesbert Law Offices PSC* (1st Cir. 2005) 402 F.3d 246, 250; accord, *Nestle Waters North America, Inc. v. Bollman* (6th Cir. 2007) 505 F.3d 498, 503–504.) Similarly, under the CAA, " '[there is] a strong public policy in favor of arbitration and any doubts regarding the arbitrability of a dispute are resolved in favor of arbitration.' " (*Bono v. David* (2007) 147 Cal.App.4th 1055, 1062 [54 Cal.Rptr.3d 837]; accord, *California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 205 [47 Cal.Rptr.3d 717].)

" 'In most important respects, the California statutory scheme on enforcement of private arbitration agreements is similar to the [FAA]; the similarity is not surprising, as the two share origins in the earlier statutes of New York and New Jersey.' " (*DIRECTV, supra,* 44 Cal.4th at p. 1343.)

"California courts often look to federal law when deciding arbitration issues under state law. . . . California law is consistent with federal law on the

question of who decides disputes over arbitrability. . . . 'Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' " (*Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553 [21 Cal.Rptr.3d 322], citation omitted.)

Generally, the FAA obligates *federal* courts to apply *state law* when interpreting an arbitration clause. (See, e.g., *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [131 L.Ed.2d 985, 115 S.Ct. 1920]; *Paladino v. Avnet Computer Technologies, Inc.* (11th Cir. 1998) 134 F.3d 1054, 1061–1062 (conc. opn. of Cox, J., joined by Tjoflat, J.); *Scurtu v. International Student Exchange* (S.D.Ala. 2007) 523 F.Supp.2d 1313, 1318–1325; *Coffman v. Provost ★ Umphrey Law Firm* (E.D.Tex. 2001) 161 F.Supp.2d 720, 724, affd. (5th Cir. 2002) 33 Fed.Appx. 705; cf. *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 60, fn. 4 [131 L.Ed.2d 76, 115 S.Ct. 1212] [explaining that in *Volt*, Supreme Court did not interpret choice-of-law provision de novo but deferred to state court's interpretation of provision].) Thus, a *federal* court would apply *California law* when determining the validity of an arbitration clause in a case involving California residents or employees. (See, e.g., *Pokorny v. Quixtar, Inc.* (9th Cir. 2010) 601 F.3d 987, 994–996; *Davis v. O'Melveny & Myers* (9th Cir. 2007) 485 F.3d 1066, 1070 & fn. 1, 1072.)

■ In short, "even when the [FAA] applies, interpretation of the arbitration agreement is governed by state law principles. . . . Under California law, ordinary rules of contract interpretation apply to arbitration agreements. . . . ' "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. . . . If contractual language is clear and explicit, it governs." ' " (*Hotels Nevada, LLC v. Bridge Banc, LLC* (2005) 130 Cal.App.4th 1431, 1435 [30 Cal.Rptr.3d 903], citations omitted; accord, *Choice Hotels Internat. v. BSR Tropicana Resort* (4th Cir. 2001) 252 F.3d 707, 710 [under FAA, agreements to arbitrate are construed according to ordinary rules of contract interpretation].)

■ As noted, under the *Rosenthal-Cronus-DIRECTV* trilogy, the FAA's procedural provisions do not apply in state court *unless* the parties expressly adopt them. The trilogy makes clear that the question is not whether the parties adopted the *CAA*'s procedural provisions: The state's procedural statutes (§§ 1281.2, 1290.2) apply by default because Congress intended the comparable FAA sections (9 U.S.C. §§ 3, 4, 10, 11) to apply in federal court. The question, therefore, is whether the parties expressly incorporated the *FAA*'s procedural provisions into their agreements.

Here, the Agreement states, " ' "By initialing in the space below you are agreeing to have any dispute arising out of the matters included in the

'Arbitration of Disputes' provision decided by neutral arbitration *as provided by California law* . . . . If you refuse to submit to arbitration after agreeing to this provision, *you may be compelled to arbitrate* under the authority of the *California Code of Civil Procedure.*" ' " (Italics added, some capitalization omitted.) As revised in October 2002, the Agreement is to be *interpreted* in accordance with the FAA. Under the plain meaning rule, as employed under the FAA, the Agreement's references to California law and the Code of Civil Procedure—which contains the CAA—do *not* expressly adopt the *FAA*'s procedural provisions. Rather, the Agreement expressly incorporates the CAA's procedural provisions.

Our conclusion is at odds with the Smyths' contention that "[t]he reason [the] standard California Association of Realtors [Residential] Purchase Contract[] utilizes federal arbitration law is to obviate what has occurred in the present case. Usually in a dispute regarding a real estate sales transaction for the purchase of a house, not only are the buyers and sellers parties, but also the real estate agents and brokers and escrow become parties. Reliance on federal law prevents the arbitration agreement from being circumvented by the plaintiff (seller or buyer) naming as defendants the agents, brokers, and escrow."

 But the plain meaning of the Agreement does not support the Smyths' contention. The FAA and the CAA employ the same rules of contract interpretation. It follows that *interpreting* an arbitration agreement in accordance with the FAA does not accomplish the Smyths' goal of displacing section 1281.2(c). "[T]he federal policy is simply to ensure the enforceability, *according to their terms,* of private agreements to arbitrate." (*Volt, supra,* 489 U.S. at p. 476, italics added.) The plain terms of the Agreement do not call for the application of the FAA's procedural provisions. (Cf. *Christensen v. Smith* (2009) 171 Cal.App.4th 931, 937–938 [90 Cal.Rptr.3d 57] [interpreting arbitration agreement according to FAA in deciding whether parties agreed to expanded scope of judicial review of arbitration awards].)

Further, *Volt, Cronus,* and *Mount Diablo* concluded section 1281.2(c) was consistent with the objectives of the FAA. (See *Volt, supra,* 489 U.S. at pp. 476–479; *Cronus, supra,* 35 Cal.4th at pp. 391–393; *Mount Diablo, supra,* 101 Cal.App.4th at p. 726.) Consequently, we need not "determin[e] . . . whether [section 1281.2(c)] conflict[s] with the FAA policy favoring the enforcement of arbitration agreements." (*DIRECTV, supra,* 44 Cal.4th at p. 1352.)

We also note that in *Volt, Rosenthal, Mount Diablo, Cronus, Rodriguez, Warren-Guthrie,* and *DIRECTV,* the parties' agreements involved interstate

commerce, making the FAA's *substantive* provision applicable to the arbitration proceedings. (See 9 U.S.C. § 2; see, e.g., *Volt, supra,* 489 U.S. at p. 476; *Rosenthal, supra,* 14 Cal.4th at p. 405.) Here, the Smyths do not contend the Agreement involves interstate commerce, nor have they offered any evidence to that effect. Thus, the language of the Agreement, not an analysis of interstate commerce, dictates the applicable law. (See *Woolls v. Superior Court* (2005) 127 Cal.App.4th 197, 211–214 [25 Cal.Rptr.3d 426] [party asserting that state law is preempted by FAA has burden of proving transaction involved interstate commerce]; *Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1099–1101 [56 Cal.Rptr.3d 326] [same].)

In *Mount Diablo, supra,* 101 Cal.App.4th 711, the choice-of-law provision stated, " 'The validity, construction, interpretation and enforcement of this Agreement shall be governed by the laws of the State of California' " (*id.* at p. 716). *Mount Diablo* relied in large part on the provision's "explicit reference" to "enforcement" in concluding the CAA's procedural provisions applied. (See 101 Cal.App.4th at pp. 722, 724.) We do not read *Mount Diablo* to suggest that an explicit reference to "interpretation," by itself, would determine the applicable procedural law.

That brings us, finally, to *Warren-Guthrie, supra,* 84 Cal.App.4th 804. There, the contract involved interstate commerce, making it subject to the FAA's substantive provision (9 U.S.C. § 2). (See *Warren-Guthrie,* at pp. 810–811.) The choice-of-law clause stated, " 'All Arbitration shall be conducted in accordance with the California Code of Civil Procedure, commencing with Section 1280.' " (*Warren-Guthrie,* at p. 815.) The Court of Appeal focused on the word "conducted," interpreted that word to mean "how the arbitration shall be conducted," and concluded the choice-of-law provision was too narrow to incorporate the CAA. (84 Cal.App.4th at pp. 815–816.) The court held that because the parties had failed to adopt the CAA, the FAA's procedural provisions governed, displacing section 1281.2(c).

But *Warren-Guthrie* asked and answered the wrong question. The complaint and the motion to compel arbitration were brought in superior court. The CAA's procedural provisions therefore applied unless the parties expressly adopted the FAA. (See *Rodriguez, supra,* 136 Cal.App.4th at p. 1122.) Assuming the parties failed to incorporate the *CAA*'s procedural provisions, that failure was of no consequence: A state's procedural statutes automatically apply in state court *unless* the parties expressly agree otherwise. (See *Volt, supra,* 489 U.S. at pp. 476, 479; *Rosenthal, supra,* 14 Cal.4th at p. 409; *Cronus, supra,* 35 Cal.4th at p. 394; *DIRECTV, supra,* 44 Cal.4th at

pp. 1350–1351, fn. 12, 1351–1352.) Because the parties in *Warren-Guthrie* did not affirmatively adopt the FAA's procedural provisions, section 1281.2(c) was fully applicable.

## D. *Trial Court's Discretion Under Section 1281.2(c)*

All that remains is the question of whether the trial court properly exercised its discretion under section 1281.2(c). In its order denying arbitration and joining all parties in a single action to be adjudicated in court, the trial court stated: "[D]efendants are not entitled to arbitration as a matter of right. This is so because this action names third parties who are not parties to the arbitration agreement. The claims against these third parties arise out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. Based on the complaint, plaintiffs are alleging that defendants Letrado and Peter Smyth fraudulently concealed their use of plaintiffs' monies to acquire the subject property for themselves. Plaintiffs are alleging joint action against these defendants.

"Similarly, plaintiffs are alleging negligence against defendants Peter Smyth, Letrado, Keller Williams [Realty], United [Title Company] and Fidelity [National Title Company]. Plaintiffs allege that all these defendants breached their duties to plaintiffs by failing to disclose conflicts of interest, failing to disclose the true nature of the real estate purchase and failing to disclose all their financial relationships with each other.

"At the very least, all of these theories of liability hinge on findings regarding the conduct of defendants Smyth and Letrado. As such, there will be an overlap of issues of law and fact. Based on this finding, it is within the Court's discretion to deny the motion to compel arbitration and force the parties to join in a single action. See § 1281.2[(c)]. Although *the parties may expressly agree that FAA procedural rules apply* to an arbitration proceeding, there is *nothing in the parties' arbitration clause* indicating such an agreement." (Italics added.)

The trial court's analysis is persuasive. We find no abuse of discretion. (See *Birl v. Heritage Care LLC* (2009) 172 Cal.App.4th 1313, 1319–1321 [91 Cal.Rptr.3d 777]; *Best Interiors, Inc. v. Millie & Severson, Inc., supra,* 161 Cal.App.4th at pp. 1329–1330; *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 483–484, 488 [17 Cal.Rptr.3d 88].)

## III

## DISPOSITION

The order is affirmed.

Rothschild, J., and Johnson, J., concurred.