Filed 9/27/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROSA M. QUINCOZA ESPINOZA, | B314914 |
| Petitioner, | (Los Angeles County Super. Ct. No. 20STCV34704) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | OPINION AND ORDER GRANTING PETITION FOR WRIT OF MANDATE |
| Respondent; | |
| CENTINELA SKILLED NURSING & WELLNESS CENTRE WEST, LLC, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate. Richard L. Fruin, Judge. Petition is granted.

Pairavi Law, Edwin Pairavi and Joshua M. Mohrsaz for Petitioner.

No appearance by Respondent.

Fisher & Phillips, Grace Y. Horoupian, Hassan A. Aburish and Megan E. Walker for Real Party in Interest.

Rob Bonta, Attorney General, Nicklas A. Akers, Assistant Attorney General, Michele Van Gelderen and Rachel A. Foodman, Deputy Attorneys General, for Attorney General as Amicus Curiae.

———————————————

Plaintiff and petitioner Rosa M. Quincoza Espinoza filed claims for discrimination and retaliation against her former employer, defendant and real party in interest Centinela Skilled Nursing & Wellness Centre West, LLC.  The trial court granted defendant's motion to stay litigation and compel the parties to proceed in arbitration.  When defendant failed to pay its arbitration fees by a statutory deadline, plaintiff moved the trial court to lift the stay of litigation and allow her to proceed in court.  The trial court denied the motion, and plaintiff filed the instant petition for a writ of mandate directing the trial court to reverse that denial.

Plaintiff's motion to lift the litigation stay contended that defendant had failed to pay the arbitration provider's initial invoice within 30 days of the due date for payment, and thus under Code of Civil Procedure[1] section 1281.97, subdivision (a)(1) was in default and material breach of the arbitration agreement. Under those circumstances, section 1281.97 entitled her to

---

[1] Unspecified statutory citations are to the Code of Civil Procedure.

2

proceed with her claims in court. Defendant opposed the motion and provided evidence that it had since made the necessary payment, and the delay was inadvertent and due to a clerical error.

The trial court found that defendant was not in material breach because it had substantially complied with its payment obligations and the delay did not prejudice plaintiff. Plaintiff filed the instant writ petition, contending that section 1281.97 must be applied strictly when payment is not made within 30 days, with no exceptions for substantial compliance or lack of prejudice. Defendant argues in opposition that strict application of section 1281.97 is contrary to legislative intent. Alternatively, defendant argues section 1281.97 is preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), which the trial court found applies to the arbitration agreement between defendant and plaintiff. Defendant did not raise this preemption argument below, and thus the trial court did not address it.

We agree with plaintiff that, based on the plain language as well as the legislative history of section 1281.97, the Legislature intended courts to apply the statute's payment deadline strictly. Thus, under section 1281.97, subdivision (a)(1), defendant was in material breach of the arbitration agreement even though, as the trial court found, the delay in payment was inadvertent, brief, and did not prejudice plaintiff.

We reject defendant's argument that the FAA preempts section 1281.97. The FAA preempts state laws that prohibit or discourage the formation or enforcement of arbitration agreements, or that interfere with fundamental attributes of arbitration. As our colleagues in Division Two recently held in *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621

(*Gallo*), section 1281.97 does none of this.  Rather, the statute set forth procedural requirements to ensure timely payment of arbitration fees, thus " *further[ing]*—rather than *frustrat[ing]*— the objectives of the FAA to honor the parties' intent to arbitrate and to preserve arbitration as a speedy and effective alternative forum for resolving disputes." (*Gallo*, at p. 630.)

Accordingly, we grant the petition.

## PROCEDURAL BACKGROUND

On September 10, 2020, plaintiff filed a complaint against defendant in the trial court, asserting claims for disability discrimination, retaliation, and other causes of action arising from her employment with defendant.

On April 1, 2021, defendant moved to compel arbitration pursuant to an agreement plaintiff signed when she began her employment.  The trial court granted the motion to compel and stayed further litigation pending the arbitration.  In granting the motion, the court found that "the FAA governs the terms of the parties' agreement."

On May 19, 2021, plaintiff's counsel e-mailed the arbitration provider, stating, "We are initiating arbitration," and providing copies of the complaint, arbitration agreement, and the trial court order compelling arbitration.  Plaintiff's counsel sent the e-mail to defendant's counsel as well.  On May 24, 2021, the arbitration provider sent the parties an initial invoice for an administrative fee and telephonic arbitration management conference, with a due date of May 31, 2021.

On July 1, 2021, the arbitration provider confirmed to plaintiff's counsel that it had yet to receive payment from defendant.  Plaintiff then filed a motion in the trial court under sections 1281.97 and 1281.98 contending defendant had

4

materially breached the arbitration agreement by failing to pay the invoice within 30 days of the due date for payment. Plaintiff sought an order lifting the litigation stay, allowing her claims to proceed in court, and imposing monetary and evidentiary sanctions on defendant under section 1281.99.

Defendant opposed plaintiff's motion, arguing that plaintiff had never served a demand for arbitration on defendant, and thus under the arbitration provider's rules, arbitration could not have commenced even had defendant timely paid the invoice. Defendant also provided declarations averring that defendant's vice president of operations had approved payment of the invoice on June 15, 2021, but "[d]ue to a clerical error, the request for cash flow was delayed and this prevented the accounts payable department from issuing a check for payment of the invoice." Defendant learned on July 1, 2021 that the invoice was unpaid, and the arbitration provider confirmed receipt of defendant's payment on July 9, 2021.

Defendant's counsel further averred that he communicated with plaintiff's counsel on other matters, including settlement negotiations, on June 15 and 24, 2021, during which plaintiff's counsel "made no mention of any delay in the commencement of the arbitration."

Following a hearing, the trial court issued an order denying plaintiff's motion to lift the litigation stay and impose sanctions. The court found defendant was "in substantial[ ] compliance with the arbitration provision and not in material breach . . . ." The court noted defendant's declaration establishing that defendant's "vice president approved payment of the invoice on June 15 and forwarded the invoice for payment but . . . the invoice was not paid then due to 'clerical error.' " The court further found

5

plaintiff "suffered no material prejudice" from the delay, as evidenced by plaintiff's counsel "engag[ing] in settlement discussions . . . without . . . expressing concern that the invoice was not by then paid."

Plaintiff then filed the instant writ petition challenging the trial court's order. A majority of a panel of this court issued an alternative writ directing the trial court to reverse its order, with one justice dissenting. The trial court declined to reverse its order, and we issued an order to show cause.[2]

## DISCUSSION

### A. Code of Civil Procedure Section 1281.97

Section 1281.97 was enacted as part of Senate Bill No. 707 (2019–2020 Reg. Sess.) (Senate Bill No. 707) (Stats. 2019, ch. 870, § 4). In the enacting legislation, the Legislature expressed

---

[2] Writ review is appropriate when "(1) 'the remedy by appeal would be inadequate' [citation] or (2) the writ presents a 'significant issue of law' or an issue of 'widespread' or 'public interest' [citations]." (*California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929.) Writ review is appropriate here. Because, as we conclude, the trial court's order was improper, requiring plaintiff to proceed through an arbitration before she can challenge the order on appeal would be a waste of time and resources, for which the appeal would be an inadequate remedy. (See *Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008, 1014, fn. 7 ["Writ review is the appropriate way to review the challenged order and avoid having parties try a case in a forum where they do not belong, only to have to do it all over again in the appropriate forum."].) Further, the interpretation and enforceability of section 1281.97 presents significant issues of law.

concern that "[a] company's failure to pay the fees of an arbitration service provider in accordance with its obligations contained within an arbitration agreement or through application of state or federal law or the rules of the arbitration provider hinders the efficient resolution of disputes and contravenes public policy." (Stats. 2019, ch. 870, § 1, subd. (c).) Further, "[a] company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes." (*Id.*, § 1, subd. (d).)

The enacting legislation cited two opinions by the Ninth Circuit Court of Appeals, *Brown v. Dillard's, Inc.* (2005) 430 F.3d 1004 and *Sink v. Aden Enterprises, Inc.* (2003) 352 F.3d 1197, characterizing them as holding that "an employer's refusal to participate in arbitration" or "an employer's failure to pay arbitration fees" constituted "a material breach" of the arbitration agreement. (Stats. 2019, ch. 870, § 1, subd. (e).)

The legislation also quoted *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 for the proposition that " 'when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court.' " (Stats. 2019, ch. 870, § 1, subd. (b).) Senate Bill No. 707 was intended to "affirm" these three court decisions and establish "that a company's failure to pay arbitration fees pursuant to a mandatory arbitration provision constitutes a

7

breach of the arbitration agreement and allows the non-breaching party to bring a claim in court."  (*Id.*, § 1, subd. (f).)

Section 1281.97, subdivision (a)(1) provides, "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, the drafting party[3] to pay certain fees and costs before the arbitration can proceed, if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel arbitration under Section 1281.2."[4]

Section 1281.97 further requires that the arbitration provider "immediately provide an invoice for any fees and costs," which is "due upon receipt" "absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs." (§ 1281.97, subd. (a)(2).)[5]  Thus, unless the parties expressly

---

[3]  The " 'drafting party' " is "the company or business that included a predispute arbitration provision in a contract with a consumer or employee," or "any third party relying upon, or otherwise subject to the arbitration provision, other than the employee or consumer."  (§ 1280, subd. (e).)

[4]  Section 1281.2 requires a court to order parties to arbitration "if it determines that an agreement to arbitrate the controversy exists," subject to specified exceptions, including that "[t]he right to compel arbitration has been waived by the petitioner," or "[g]rounds exist for rescission of the agreement." (§ 1281.2, subds. (a)–(b).)

[5]  This subdivision was a later amendment to section 1281.97.  (See Stats. 2021, ch. 222, § 2.)

8

agree to the contrary, the drafting party's receipt of the invoice triggers the 30-day clock under section 1281.97, subdivision (a)(1).[6]

In the event the drafting party does not pay the invoice within the 30 days, thus materially breaching the arbitration agreement under section 1281.97, subdivision (a)(1), the employee or consumer may "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction," or "[c]ompel arbitration in which the drafting party shall pay reasonable attorney's fees and costs related to the arbitration." (§ 1281.97, subd. (b).)

Should the employee or consumer choose to proceed in court, "the court shall impose sanctions on the drafting party in accordance with Section 1281.99." (§ 1281.97, subd. (d).) Section 1281.99, in turn, states that the court "shall impose a monetary sanction against a drafting party" in the form of "the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach." (§ 1281.99, subd. (a).)

The court "may" impose additional specified sanctions "unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 1281.99, subd. (b).) The additional sanctions include "[a]n evidence sanction . . . prohibiting the drafting party from conducting discovery in the civil action," "[a] terminating sanction" either "striking out the

---

[6] The invoice in the instant case, issued May 24, did not state it was due upon receipt, but rather listed a due date of May 31. The parties do not take issue with that due date, and we do not address it further.

9

pleadings or parts of the pleadings of the drafting party," or "rendering a judgment by default against the drafting party," or "[a] contempt sanction." (*Id.*, subd. (b)(1)–(3).)

Section 1281.98, also enacted under Senate Bill No. 707 (Stats. 2019, ch. 870, § 5), is similar to section 1281.97, but applies when the drafting party fails to make payments required to continue an arbitration already in progress. (§ 1281.98, subd. (a)(1).) Although plaintiff brought her motion to lift the arbitration stay under both sections 1281.97 and 1281.98, defendant failed to pay within 30 days the initial invoice from the arbitration provider, not a subsequent invoice during the pendency of the proceedings. Thus, section 1281.97 applies to the instant case, and that statute is the focus of our analysis.

## B. Section 1281.97 Contains No Exceptions for Substantial Compliance, Unintentional Nonpayment, or Absence of Prejudice

The parties do not dispute that defendant did not pay the arbitration provider's invoice within 30 days of the due date for payment. The trial court nonetheless denied plaintiff's motion under section 1281.97, finding defendant was in "substantial[ ] compliance" with the arbitration agreement and "not in material breach," because the delayed payment was due to " 'clerical error,' " and the delay did not prejudice plaintiff. Plaintiff does not contest the findings that the delay was due to clerical error and she suffered no prejudice. Rather, she argues section 1281.97 "provide[s] no such exceptions," and requires strict enforcement. We agree with plaintiff's interpretation of the statute.

" ' " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to

10

effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' [Citation.]" (*Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190.) Interpretation of a statute is a question of law we review de novo. (*Ibid.*)

The language of section 1281.97 is unambiguous. It provides that the drafting party is in "material breach," and the nondrafting party is entitled to the remedies under the statute, "if the fees or costs to initiate an arbitration proceeding are not paid within 30 days after the due date . . . ." (§ 1281.97, subd. (a)(1).) Under the plain language of the statute, then, the triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the nondrafting party. The plain language therefore indicates the Legislature

11

intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline.

Supporting our conclusion is that elsewhere in the statutory scheme enacted under Senate Bill No. 707, the Legislature expressly granted the trial court discretion whether to order certain remedies for nonpayment. Section 1281.99 states that the court "*shall* impose a monetary sanction" in the event of a material breach under section 1281.97 (§ 1281.99, subd. (a), italics added), but the court "*may* order" additional nonmonetary sanctions "unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust" (*id.*, subd. (b), italics added).

Given the Legislature's express grant of discretion as to imposition of nonmonetary sanctions, we may presume the Legislature did not intend implicitly to grant that same discretion on the issues of material breach and imposition of monetary sanctions. (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 385 [" 'When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning.' "]; *People v. Buycks* (2018) 5 Cal.5th 857, 880 [" 'When the Legislature "has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded." ' "].)

Defendant argues the legislative history of Senate Bill No. 707 indicates the Legislature's intent was to discourage drafting parties from deliberately delaying payment of fees, "not to punish innocent parties who unintentionally delayed" payment. Defendant contends to apply the remedies of section

12

1281.97 in the present circumstance, in which defendant's delay in payment was inadvertent and due to a clerical error, would be an "absurd consequence[ ]."

It is certainly true that "strategic non-payment of fees" was a motivating concern behind Senate Bill No. 707. (Stats. 2019, ch. 870, § 1, subd. (d).) Had the Legislature intended to limit the reach of the statute to that circumstance, it could have done so, including by adding a provision to section 1281.97 similar to that in section 1281.99, subdivision (b), giving trial courts discretion not to apply the statute if the delay in payment was inadvertent or otherwise excusable. The Legislature chose not to include such a provision, however, which indicates an intent to apply the statute to any circumstance in which a drafting party fails timely to pay, and not just when the drafting party does so deliberately.

We do not agree that applying the statute strictly, even when nonpayment is inadvertent, leads to absurd consequences. Although strict application may in some cases impose costs on drafting parties for innocent mistakes, the Legislature could have concluded a brightline rule is preferable to requiring the nondrafting party to incur further delay and expense establishing the nonpayment was intentional and prejudicial. The Legislature also reasonably could have decided that whatever the reason for a delay in payment, the drafting party should bear the consequences of that delay rather than the nondrafting party.

Indeed, the legislative history indicates the Legislature considered and rejected the argument that section 1281.97 would unfairly penalize drafting parties for minor errors. Groups opposing Senate Bill No. 707, including the California Chamber of Commerce, objected that under the proposed law a drafting party would be subject to sanctions "even if[ ] 'the drafting party

13

paid a majority of the fees and costs, but yet a small, minor portion was not paid.' " (Assem. Com. on Judiciary, Analysis of Senate Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 8.) An analysis by the Assembly Committee on Judiciary acknowledged "that a failure to pay the required costs and fees in full would expose a company to significant monetary penalties and potentially serious evidentiary sanctions or a contempt holding. However, this risk should also be viewed in light of the harm that the drafting party's breach of contract could impose on employees or consumers who are in limbo, with no avenue to pursue their legal rights. Particularly in employment matters, the plaintiff's livelihood may be the subject of the adjudication. Although a large company may view its failure to pay a few hundred dollars for arbitration as a minor, immaterial, mistake, that mistake may delay the hearing of an employee's claims. While immaterial to the drafting party, the ensuing delay associated with this minor error could be significant to the employee, who may not be able to pay bills, rent or other expenses that could result in the loss of their residence, or damage to their credit rating, while the dispute remains unresolved." (*Id.* at pp. 8–9.)

Defendant argues that *Sink*, the Ninth Circuit case cited in the legislation enacting section 1281.97, does not support a finding of material breach in the instant case. Were the relevant language of section 1281.97 ambiguous, arguably we would look to *Sink* to assist us in interpreting it. As we have explained, the language is not ambiguous. We will not read implied terms into an unambiguous statute merely because the enacting legislation invoked a prior court decision.

14

In sum, the trial court erred in denying plaintiff's motion on the basis that defendant substantially complied with section 1281.97, subdivision (a)(1), its delayed payment was inadvertent, and plaintiff suffered no prejudice.

## C.    The FAA Does Not Preempt Section 1281.97

Our conclusion that section 1281.97 must be applied strictly does not end our inquiry, because defendant further argues the statute, if strictly applied, conflicts with the FAA and therefore is preempted.  Because "federal preemption presents a pure question of law," our review is de novo.  (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10.)[7]

"The FAA makes arbitration agreements 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'  9 U.S.C. § 2.  That statutory provision establishes an equal-treatment principle:  A court may invalidate an arbitration agreement based on

---

[7] Plaintiff argues that defendant forfeited its preemption argument by failing to raise it in the trial court.  We reject this argument.  Courts have held that "a party may raise a constitutional issue, like preemption, for the first time on appeal."  (*ReadyLink Healthcare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1175.)  It is well settled, moreover, that "a judgment or order will be affirmed if it is correct on any theory, regardless of the trial court's reasons; thus, a respondent may assert a new theory to establish that an order was correct on that theory 'unless doing so would unfairly prejudice [petitioner] by depriving him or her of the opportunity to litigate an issue of fact.'  [Citation.]"  (*Bailon v. Appellate Division* (2002) 98 Cal.App.4th 1331, 1339, italics omitted.)  Defendant's preemption argument does not raise any issues of fact, and plaintiff does not contend otherwise.

15

'generally applicable contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' [Citation.] The FAA thus preempts any state rule discriminating on its face against arbitration—for example, a 'law prohibit[ing] outright the arbitration of a particular type of claim.' [Citation.]" (*Kindred Nursing Centers Ltd. v. Clark* (2017) 137 S.Ct. 1421, 1426.

The FAA also preempts facially neutral state-law rules that "disfavor arbitration *as applied* by imposing procedural requirements that 'interfere[ ] with fundamental attributes of arbitration,' especially its ' "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." [Citation.]' [Citation.]" (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1143 (*Sonic*), quoting *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 344, 348 (*Concepcion*).)

Defendant argues section 1281.97 violates the FAA's equal-treatment principle because it "creates a definition of 'material breach' and 'waiver' " exclusive to arbitration agreements and inconsistent with "general principles of breach of contract and waiver in other contexts." Defendant contends that under generally applicable California contract law, a finding of waiver or material breach involves a fact-specific, factor-based inquiry by the trier of fact. Section 1281.97 "displaces ordinary fact-finding," instead mandating that any failure to pay arbitration fees within the 30-day statutory period, even briefly and unintentionally, constitutes a material breach and waiver of the right to arbitration. Section 1281.97's rule, moreover, asymmetrically applies only to drafting parties. Defendant

16

contends section 1281.97 therefore singles out arbitration agreements for disfavored treatment, in violation of the FAA.

After completion of briefing and oral argument in the instant case, our colleagues in Division Two issued their decision in *Gallo*, *supra*, 81 Cal.App.5th 621, upholding the validity of section 1281.97 in the face of a preemption argument similar to the one advanced by defendant here. We invited the parties to submit supplemental briefing addressing *Gallo*, which they did. Having reviewed that briefing, we agree with the holding and reasoning of *Gallo*, and apply it here. We begin by summarizing *Gallo*.

### 1. Gallo

In *Gallo*, the defendant failed to pay its arbitration fees within 30 days of the deadline set by the arbitration provider, apparently due to miscommunications within the law firm representing the defendant. (*Gallo*, *supra*, 81 Cal.App.5th at pp. 631–632.) The defendant ultimately paid its fees 10 days past the 30-day cutoff. (*Id.* at p. 632.) The trial court granted the plaintiff's motion under section 1281.97 to return the matter to court, finding the defendant "had no viable excuse for its late payment," and rejecting the defendant's argument that the FAA preempted section 1281.97. (*Gallo*, at p. 632.)

The Court of Appeal affirmed the trial court. (*Gallo*, *supra*, 81 Cal.App.5th at p. 647.) The appellate court acknowledged that section 1281.97 "undeniably single[s] out arbitration insofar as [it] define[s] procedures that apply *only* to arbitrated disputes." (*Gallo*, at p. 641.) The court further acknowledged that the statute "departs from the usual rule" that material breach is "an issue of fact for the trier of fact to determine." (*Id.* at p. 644.)

17

The court disagreed with the defendant, however, that this required a finding of preemption.

Analyzing precedent, the *Gallo* court observed that the mere fact that a law applies solely to arbitration is insufficient to preempt it under the FAA. (*Gallo*, *supra*, 81 Cal.App.5th at p. 638.) Rather, the FAA preempts state laws that "single[ ] out one or more types of arbitration agreements in order to 'outright' 'prohibit[ ]' their formation or enforcement," such as laws prohibiting arbitration of certain categories of claims. (*Id.* at pp. 637–638.) The FAA also preempts state laws that, while not outright barring arbitration of certain claims, " 'more subtly' discourage" the formation or enforcement of arbitration agreements, for example by imposing heightened notice requirements for arbitration agreements, limiting the ability of representatives with power of attorney to sign arbitration agreements, or prohibiting waivers of class arbitration. (*Id.* at p. 638.)

In contrast, *Gallo* noted state laws "that define the standard rules 'governing the conduct of arbitration," such as provisions within the California Arbitration Act (CAA) (§ 1280 et seq.), "have been upheld as not preempted by the FAA, even though those provisions are necessarily arbitration specific." (*Gallo*, *supra*, 81 Cal.App.5th at p. 639.) This is because " '[t]here is no federal policy favoring arbitration under a certain set of procedural rules" [citation] so 'the FAA leaves room for states to enact some rules affecting arbitration' that the parties may choose to adopt [citation]." (*Ibid.*) As examples of valid arbitration-specific state rules, *Gallo* cited section 1281.2, which permits trial courts under certain circumstances to stay arbitration or deny it altogether if there is risk of a conflicting

18

ruling in a parallel judicial action, and section 1286.2, which narrows the scope of judicial review of arbitration awards. (*Gallo*, at pp. 639–640.)

Applying these principles, the *Gallo* court concluded that, although section 1281.97 is an arbitration specific statute, it does not "commit the additional—and . . . *necessary for preemption*—sin of outright prohibiting arbitration or more subtly discouraging arbitration." (*Gallo*, *supra*, 81 Cal.App.5th at p. 641.) Rather, stated the court, section 1281.97, along with section 1281.99, "define the procedures governing *the date by which* the party who drafted an agreement to arbitrate against an employee or consumer must pay the initial fees and costs to arbitrate, and specify *the consequences* of untimely payment." (*Ibid.*) These provisions, the court reasoned, are akin to other procedural statutes under the CAA, such as sections 1281.2 and 1281.6, "that have been repeatedly found *not* to be preempted by the FAA, at least where . . . the parties have agreed to incorporate the CAA into their agreement to arbitrate." (*Gallo*, at p. 642.)

The court also concluded sections 1281.97 and 1281.99 "do not disfavor arbitration because the consequences of blowing the payment limitations period they erect do not necessarily end the nascent arbitration: Section 1281.97 gives the employee or consumer the *option* of continuing in arbitration or returning to a judicial forum." (*Gallo*, *supra*, 81 Cal.App.5th at p. 642.)

The court further held that section 1281.97 does not interfere with fundamental attributes of arbitration, the other basis upon which courts have found state laws affecting arbitration preempted. (*Gallo*, *supra*, 81 Cal.App.5th at pp. 640, 642.) Because the arbitration agreement at issue in *Gallo*

19

expressly incorporated the CAA, applying the CAA's procedural rules did not "interfere with the FAA's first goal of honoring the parties' intent." (*Id.* at p. 642.) Also, applying section 1281.97 "is fully consistent with the parties' more general intent to arbitrate because the parties' agreement was to arbitrate the dispute, not let it die on the vine and languish in limbo while the party who demanded arbitration thereafter stalls it by not paying the necessary costs in a timely fashion." (*Gallo*, at p. 643.)

As for the FAA's "goal of safeguarding arbitration as an expedited and cost-efficient vehicle for resolving disputes," the *Gallo* court concluded section 1281.97 actually "*facilitate*[*s*] arbitration by preventing parties from insisting that a dispute be resolved through arbitration and then sabotaging that arbitration by refusing to pay the fees necessary to move forward in arbitration." (*Gallo*, *supra*, 81 Cal.App.5th at p. 643.)

The *Gallo* court rejected the defendant's argument, similar to defendant's argument in this case, that section 1281.97 disfavored arbitration because it allowed a finding of material breach without a showing that the defendant "was to blame for the late payment or that plaintiff was prejudiced by it." (*Gallo*, *supra*, 81 Cal.App.5th at p. 644.) The court concluded that the Legislature "had a good reason for declaring untimely payment [of arbitration fees] a material breach as a matter of law": "Employees and consumers were facing either the complete denial of any relief or delays in obtaining relief by virtue of the ' "perverse incentive" ' companies and businesses had to push claims into arbitration and then to refuse to pay the resulting arbitration fees; in such circumstances and to combat those incentives, the Legislature reasoned, *no* breach was immaterial to the stranded employee or consumer." (*Ibid.*)

20

The court further noted that all arbitration-specific rules alter rights the parties otherwise would have under generally applicable litigation principles—for example, the rules limiting judicial review of arbitration awards deprive the losing party of the full right to appeal available in litigation. (*Gallo*, *supra*, 81 Cal.App.5th at p. 644.) Yet, noted the court, many such rules have not been held preempted. (*Id.* at p. 645.) The court explained: "[S]ection 1281.97 is one of several statutes that are part of the CAA, which defines the very procedures by which arbitration is to be conducted under California law. These statutes, by definition, set up different procedures from those governing litigation in the California courts. In any given case (and thus in *every* single case), one of the parties to an arbitration will be able to show that it was harmed by being subject to those arbitration-specific procedures: A party who might have obtained a reversal due to legal or factual error in the trial court will be denied that reversal under the more limited review provisions of section 1286.2, just as [the defendant] is now arguing that it might not have been found in material breach of the arbitration agreement had it been in court (and not subject to § 1281.97), where it could have advanced its counsel's inattentiveness as a possible excuse for its 36-day-late payment. If that showing were enough to justify preemption under the FAA, then preemption would be found in every case and the CAA would cease to exist. This is contrary to the law, explained above, which has repeatedly rejected FAA preemption challenges to the CAA's provisions defining how arbitration is to proceed." (*Id.* at pp. 644–645.)

Addressing other arguments the defendant in *Gallo* raised, the court concluded the fact that section 1281.97 "had the effect

21

of ending the arbitration in this case" did not "frustrate[ ] the FAA's objective of honoring the parties' intent," because the parties agreed to be bound by the CAA and its payment requirements, and "did *not* agree to let [the defendant] commit . . . violations of section 1281.97 with impunity." (*Gallo*, *supra*, 81 Cal.App.5th at p. 645.)  The court rejected the defendant's contention that canceling an arbitration because of a slight delay in payment thwarted the FAA's objective of speedy and efficient dispute resolution, stating that "section 1281.97's procedures putting a business's feet to the fire to pay on time *facilitates* the resolution of disputes with alacrity."  (*Ibid.*) Similarly, the court disagreed section 1281.97 was " 'hostile' " to arbitration when the statute, if incorporated into the parties' agreement, "honors the parties' intent and results in a faster proceeding."  (*Ibid.*)

*Gallo* noted that federal district courts uniformly had rejected arguments the FAA preempted section 1281.97.  (*Gallo*, *supra*, 81 Cal.App.5th at p. 643, citing *Postmates Inc. v. 10,356 Individuals* (C.D.Cal., Jan. 19, 2021, No. CV-20-2783-PSG (JEMx), 2021 WL 540155, 2021 U.S.Dist. Lexis 28554, pp. *21– *22; *Agerkop v. Sisyphian LLC* (C.D.Cal., Apr. 13, 2021, No. CV-19-10414-CBM-(JPRx), 2021 WL 1940456, 2021 U.S.Dist. Lexis 93905, pp. *11–*13.)

### 2.    *Analysis*

#### a.    Under *Gallo*'s reasoning, defendant's preemption argument fails

We agree with *Gallo* that section 1281.97 is not analogous to state laws preempted by the FAA in other cases.  Section 1281.97 does not prohibit or discourage the formation or

22

enforcement of arbitration agreements, either by barring certain claims from arbitration or imposing obstacles that make it difficult to enter into arbitration agreements. Indeed, in the instant case, as in *Gallo*, the defendant successfully moved the trial court to enforce the arbitration agreement at issue.

Once a court has enforced an arbitration agreement, however (or the parties have agreed to arbitrate under it), section 1281.97 sets forth certain procedural requirements to achieve the FAA's goal of "safeguarding arbitration as an expedited and cost-efficient vehicle for resolving disputes." (*Gallo*, *supra*, 81 Cal.App.5th at p. 643.) Specifically, drafting parties must timely pay their required fees to ensure the arbitration does not "die on the vine and languish in limbo." (*Ibid.*) Far from imposing an obstacle to arbitration, section 1281.97 facilitates an expeditious resolution of the dispute, thus furthering the goals of the FAA. As *Gallo* observed, this is akin to section 1286.2, which also facilitates expeditious resolution by narrowing the scope of judicial review of arbitration awards. (*Gallo*, at p. 640; *Marsch v. Williams* (1994) 23 Cal.App.4th 238, 243 ["To ensure that an arbitrator's decision is, indeed, the end of a dispute, arbitration judgments are subject to extremely narrow judicial review."].)

Further distinguishing section 1281.97 from invalid state laws prohibiting or discouraging arbitration, section 1281.97 does not automatically invalidate arbitration agreements if the drafting party fails to meet is procedural obligations. Rather, as *Gallo* noted, it "gives the employee or consumer the *option* of continuing in arbitration or returning to a judicial forum." (*Gallo*, *supra*, 81 Cal.App.5th at p. 642.) In other words, even when triggered, the remedies under section 1281.97 are not an absolute bar to arbitration.

23

Also compelling is *Gallo*'s reasoning that the mere fact an arbitration specific rule alters the rights the parties would have in ordinary litigation does not necessarily mean the rule conflicts with the FAA's equal treatment principle. As *Gallo* explained, courts have upheld the CAA's limitations on judicial review of arbitration awards, despite those rules depriving the parties of their full appellate rights. (*Gallo*, *supra*, 81 Cal.App.5th at pp. 644–645.) Similarly, section 1281.97, for the sake of ensuring expeditious resolution of disputes, limits the arguments a drafting party may raise when it fails timely to pay its required fees, for example barring arguments that the failure was excusable or nonprejudicial. We agree with *Gallo* that this limitation does not violate the FAA.

Defendant argues *Gallo* is inapposite because the court in that case "was not presented with the issue of whether strict application of [section 1281.97] is required or whether such strict application—without regard to general contract principles—would be preempted by the FAA." Defendant contends "the superior court in *Gallo had* considered general contract principles in finding that the defendant had 'no viable excuse for its late payment' [citation], so there was no conflict between the statute's requirements and the superior court's contract analysis." In the instant case, in contrast, the trial court applied generally applicable contract principles of substantial compliance to deny plaintiff's section 1281.97 motion.

Nothing in *Gallo* suggests its holding depends on the trial court's ruling under section 1281.97 also being correct under ordinary contract principles. *Gallo* specifically acknowledged section 1281.97 applies a different rule for material breach than applies under generally applicable contract law, and concluded

24

the rule was valid under the FAA without reference to the trial court's particular ruling in that case. (*Gallo, supra,* 81 Cal.App.5th at pp. 644–645.) Indeed, apart from the summary of the case background, *Gallo* never discusses the trial court's particular ruling. We reject defendant's suggestion that *Gallo*'s preemption analysis would differ had the trial court in that case, as in the instant case, denied the section 1281.97 motion under generally applicable contract principles.

Defendant further argues 1281.97 conflicts with the FAA because its penalties for delays in payment, namely the monetary and other sanctions under section 1281.99, will discourage companies from entering into arbitration agreements. We disagree. The statute's 30-day deadline is generous enough that a party exercising reasonable diligence reliably can meet it, and we think it unlikely employers and others would forego the advantages of arbitration for fear of missing that deadline. Rather, particularly in light of *Gallo* and this opinion, we expect drafting parties will take extra care timely to pay their arbitration invoices, thus expediting resolution of disputes and fulfilling the goals of section 1281.97.

> **b.      The arbitration agreement at issue incorporated the CAA by default**

As we explain below, the arbitration agreement in the instant case differs from the arbitration agreement in *Gallo* in that it does not expressly incorporate the CAA. That distinction does not affect our holding, because we conclude the arbitration agreement in the instant case incorporates the CAA by default.

The arbitration agreement in *Gallo* stated that the arbitrator was "to look to the 'California Arbitration Act . . . to conduct the arbitration and any pre-arbitration activities.' "

25

(*Gallo*, *supra*, 81 Cal.App.5th at p. 630].) The *Gallo* court emphasized this express agreement to incorporate the CAA, which now includes section 1281.97, when concluding that section 1281.97 did not "frustrate[ ] the FAA's goals of honoring the parties' intent" by imposing terms to which the parties did not agree. (*Gallo*, at p. 643; see *id.* at p. 642 [referring to sections of the CAA "that have been repeatedly found *not* to be preempted by the FAA, at least where . . . the parties have agreed to incorporate the CAA into their agreement to arbitrate"].)

The arbitration agreement at issue in the instant case does not include express language broadly incorporating the CAA. On the subject of governing law, the agreement states, "The arbitrator shall be bound by the provisions and procedures set forth in the Employment Arbitration Rules and Mediation Procedures of the [American Arbitration Association]. The applicable substantive law shall be the law of the state in which [the employee] provide[s] services or federal law. If both federal and state law speak to a cause of action, the party commencing the action shall have the right to elect his/her choice of law."

The agreement also provides that discovery is governed by "the civil discovery statutes of the state in which [the employee] provide[s] services." The agreement further states, "Following the issuance of the arbitrator's decision, any party may petition a court to confirm, enforce, correct or vacate the arbitrator's opinion and award under the Federal Arbitration Act, 9 U.S.C. §§ 1–16, if applicable, and/or applicable state law."

This language lacks the broad express incorporation of the CAA's procedures present in *Gallo*—rather, the agreement expressly refers to state law procedures only in the context of

26

discovery and any steps "to confirm, enforce, correct or vacate the arbitrator's opinion and award."

We need not, and do not, decide whether *Gallo*'s holding depends on the arbitration agreement at issue incorporating the CAA, because we conclude that requirement is satisfied here, despite the lack of express incorporation. As this court held in *Valencia v. Smyth* (2010) 185 Cal.App.4th 153 (*Valencia*), "the procedural provisions of the CAA apply in California courts by default." (*Id.* at p. 174, italics omitted.)

In *Valencia*, we confronted whether the arbitration agreement at issue was governed by the procedural provisions of the CAA or the FAA. As we explained, "parties may '*expressly* designate that any arbitration proceeding [may] move forward under the FAA's procedural provisions rather than under state procedural law.' [Citation.] Absent such an express designation, however, the FAA's procedural provisions do not apply in state court." (*Valencia*, *supra*, 185 Cal.App.4th at p. 174; accord, *Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 945; see *Mave Enterprises, Inc. v. Travelers Indemnity Co.* (2013) 219 Cal.App.4th 1408, 1429 ["the procedural provisions of the CAA" apply in California courts "absent a choice-of-law provision expressly mandating the application of the procedural law of another jurisdiction"].)

Although the arbitration agreement at issue in the instant case does not expressly incorporate the procedural provisions of the CAA, it also does not expressly incorporate the procedural provisions of another jurisdiction. Given the absence of contrary language, therefore, the parties implicitly consented to application of the CAA's procedural provisions, as much as had they expressly incorporated those provisions into their

27

arbitration agreement.  (See *Judge v. Nijjar Realty, Inc.* (2014) 232 Cal.App.4th 619, 631 [when arbitration agreement "does not mention the FAA or the CAA, and . . . does not include a choice-of-law provision," California procedural law applies]; *Valencia*, *supra*, 185 Cal.App.4th at p. 179 ["Assuming the parties failed to incorporate the CAA's procedural provisions, that failure was of no consequence:  A state's procedural statutes automatically apply in state court unless the parties expressly agree otherwise," italics omitted].)  Thus, as in *Gallo*, application of the provisions does not conflict with the FAA's goal of honoring the parties' intent.

We acknowledge that the trial court, in granting defendant's motion to compel arbitration, ruled that "the FAA governs the terms of the parties' agreement," a ruling plaintiff does not challenge.  The trial court made that finding, however, solely in the context of compelling arbitration in the first place, concluding that under the FAA its "analysis is limited . . . to whether there is an enforceable agreement between the parties and whether Plaintiff's claims fall within the ambit of that agreement."  The question of what procedures governed the arbitration itself was not before the trial court, and defendant never raised its preemption argument in the trial court.  We interpret the trial court's ruling on the applicability of the FAA, therefore, to be narrow, and plaintiff's lack of challenge to that ruling does not preclude our conclusion that section 1281.97 applies to the agreement before us.

In its supplemental briefing, defendant argues the arbitration agreement is *not* silent as to which procedural rules apply, because it expressly incorporates the Employment Arbitration Rules and Mediation Procedures of the American

28

Arbitration Association (AAA rules).[8]  Rule 47 of those rules, entitled "Suspension for Non-Payment," provides "If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment.  If such payments are not made, the arbitrator may order the suspension or termination of the proceedings.  If no arbitrator has yet been appointed, the AAA may suspend or terminate the proceedings."

Defendant argues AAA rule 47 "do[es] *not* require that the [arbitration] be immediately terminated if payment is not received within 30 days of the invoice."  Rather, the arbitrator has "the *discretion* to suspend or terminate the arbitration proceedings upon non-payment."

Assuming arguendo parties contractually may waive the provisions of section 1281.97, we disagree with defendant that incorporation of the AAA rules constitutes waiver.  AAA rule 47 concerns the actions the arbitrator or arbitration provider may take in the event of nonpayment.  Section 1281.97, in contrast, concerns the actions the trial court may take upon nonpayment, including lifting the litigation stay so the matter may proceed in court and imposing sanctions.[9]  Nothing in the AAA rules purports to limit or modify the trial court's powers in that regard,

---

[8]  We grant defendant's request to take judicial notice of the AAA rules.  (Evid. Code, §§ 452, subd. (h), 459.)  We also take judicial notice of the declaration of Mohsen Mobasser in support of the motion to compel arbitration and stay proceedings pending arbitration, which was filed in the trial court and attaches the parties' arbitration agreement.  (*Id.*, §§ 452, subd. (d), 459.)

[9]  We express no opinion if and to what extent section 1281.97 governs the actions of arbitrators, an issue not before us.

and plaintiff's agreement to abide by the AAA rules therefore cannot constitute a waiver of her right to invoke those powers.

## D. On Remand, the Trial Court Shall Consider Plaintiff's Sanctions Request

Because the trial court denied plaintiff's motion under section 1281.97 upon a finding of defendant's substantial compliance, a ruling we hold to be in error, the trial court did not reach plaintiff's motion for sanctions under section 1281.99. We direct the trial court to address plaintiff's sanctions motion on remand. We express no opinion as to how the trial court should rule on that motion.

## DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue directing the trial court to (1) vacate its order denying plaintiff's motion under Code of Civil Procedure sections 1281.97 and 1281.99; (2) enter an order lifting the stay of litigation and allowing plaintiff to bring her claims in court; and (3) conduct further proceedings, consistent with this opinion, on plaintiff's motion for sanctions under section 1281.99. Petitioner shall recover her costs with regard to this writ proceeding.

CERTIFIED FOR PUBLICATION.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.          CHANEY, J.

30