Filed 6/6/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KARLA VELARDE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MONROE OPERATIONS, LLC,<br>et al.,<br><br>    Defendants and Appellants. | G063626<br><br>(Super. Ct. No. 30-2023-01323484)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, John C. Gastelum, Judge. Affirmed.

Lewis Brisbois Bisgaard & Smith, Raul L. Martinez, Wesley A. Krueger and Robert A. Lopez for Defendants and Appellants.

Reisner and King, Adam J. Reisner, Tessa King; Pletcher Law and Andrew S. Pletcher for Plaintiff and Respondent.

\*        \*        \*

Monroe Operations, LLC, doing business as Newport Healthcare (Newport Healthcare) is a nationwide behavioral healthcare company which provides therapy for individuals with mental health issues. It has residential treatment facilities across the country including in California, Utah, Minnesota, Connecticut, and Washington. Newport Healthcare hired Karla Velarde (Velarde) as a care coordinator. Newport Healthcare required Velarde to sign an arbitration agreement as a condition of employment. Newport Healthcare later terminated Velarde's employment. Velarde filed a lawsuit alleging, among other things, discrimination, retaliation, and violation of whistleblower protections against Newport Healthcare and its director of residential services, Amanda Seymour (collectively, Appellants).

Appellants filed a motion to compel arbitration which the trial court denied. The trial court ruled Newport Healthcare pressured Velarde to sign the agreement, which she did not want to do, and the agreement unlawfully prohibited Velarde from seeking judicial review of an arbitration award. On appeal, Appellants take issue with the trial court interpreting the agreement in a manner which bars judicial review of an arbitration award.

There was extensive evidence of procedural unconscionability, with an adhesive contract, buried in a stack of 31 documents to be signed as quickly as possible while a human resources (HR) manager waited, before Velarde could start work that same day. Most problematically, in response to Velarde's statements that she was uncomfortable signing the arbitration agreement as she did not understand it, false representations were made by Newport Healthcare's HR manager to Velarde about the nature and terms of the agreement. These representations, which specifically and directly contradicted the written terms of the agreement, rendered aspects of the agreement substantively unconscionable. These procedural and substantively

2

unconscionable aspects, taken together, render the agreement unenforceable. We therefore affirm.

We need not reach the issue of whether the agreement unlawfully prohibited judicial review.

## STATEMENT OF FACTS

Prior to starting her employment at Newport Healthcare, Velarde worked as a customer service agent for Air Tahiti. However, she was laid off in March 2020 due to the COVID-19 pandemic. She was unemployed for nine months until Newport Healthcare agreed to hire her as a care coordinator.

Newport Healthcare required Velarde to attend an orientation scheduled for her first day of work. Upon arriving at Newport Healthcare's office, Velarde was escorted to a large conference room where she waited until an HR manager arrived. The HR manager presented Velarde with "a stack of [31] documents and told [her she] was required to complete the forms before [she] could start working." The HR manager told her, "'we gotta get through [these to] get you onboard. We'll try to get through them as fast as possible.'" Velarde "felt pressured to fill out the forms quickly, since [the HR manager] was waiting for [her] . . . ."

One of the documents was an arbitration agreement, which Velarde refused to sign because she "did not understand what it was." Velarde told the HR manager that because she did not understand what it was, she did not feel comfortable signing it. The HR manager told her, "'if there are ever any issues, [the arbitration agreement] will allow us to resolve them for you.'" Velarde asked if she needed to sign the agreement in order to start working. The HR manager responded, "'Yes. This will help us resolve any issues without having to pay lawyers.'" Velarde executed the agreement because she "knew that [she] had to sign it to begin working . . . ."

The arbitration agreement was a five-page document on a preprinted form entitled "Mutual Agreement to Arbitrate." The agreement required the parties to submit "all claims, disputes, and/or controversies . . . that Company may have against Employee or that Employee may have against Company" to arbitration. It contained 15 sections and referenced the Federal Arbitration Act (FAA), the American Arbitration Association Employment Arbitration Rules, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence. The parties agreed the FAA would govern the arbitration, that each party had a right to conduct discovery in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence would guide the admissibility of evidence, and that each party would bear their own attorney fees unless the arbitrator ordered otherwise.

Following her termination, Velarde filed a complaint in the superior court alleging disability, discrimination, and whistleblower protection violations, among other claims, against Appellants. Appellants filed a motion to compel arbitration which Velarde opposed, as relevant here, on the basis the agreement was unconscionable. The court found there was procedural unconscionability because Newport Healthcare presented Velarde with 31 documents to sign and required her to agree to arbitration before she could start working. And by having an HR manager wait until Velarde signed each form, Newport Healthcare pressured Velarde to quickly sign the forms. Moreover, the HR manager questioned Velarde's refusal to sign the arbitration agreement. The court ruled there was substantive unconscionability because the agreement did not allow for judicial review of the arbitrator's award. The court denied the motion.

4

DISCUSSION

Appellants contend the trial court erred because the agreement is neither procedurally nor substantively unconscionable. They argue the trial court misinterpreted the agreement and incorrectly concluded there was evidence of procedural unconscionability. They assert the document was "a stand-alone agreement, not hidden inconspicuously amongst other employment . . . documents," and Newport Healthcare did not mislead Velarde as to the nature of the document's terms nor did it coerce Velarde into signing the document.

We disagree.

I.

UNCONSCIONABILITY

"Appellate review of an order regarding an arbitration agreement's validity is de novo if the evidence is not in conflict and the ruling is based entirely on an interpretation of law." (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 493 (*Ramirez*).) "If a validity ruling rests on the trial court's resolution of evidentiary disputes, substantial evidence review applies to the court's factual findings." (*Ibid.*) "'[E]ven when the [FAA's procedural provisions] appl[y], interpretation of the arbitration agreement is governed by state law principles . . . .'" (*Valencia v. Smyth* (2010) 185 Cal.App.4th 153, 177.)

"A written agreement to submit a controversy to arbitration is valid, enforceable, and irrevocable, 'save upon such grounds as exist for the revocation of any contract.'" (*Ramirez, supra*, 16 Cal.5th at p. 492.) "Unconscionability provides such grounds." (*Ibid.*) "Unconscionability has both a procedural and a substantive element." (*Ibid.*) "Both procedural and substantive elements must be present to conclude a term is unconscionable,

5

but these required elements need not be present to the same degree." (*Id.* at p. 493.)

"Procedural unconscionability 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.'" (*Ramirez, supra*, 16 Cal.5th at p. 492.) "This element is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (*Ibid.*)

"Substantive unconscionability looks beyond the circumstances of contract formation and considers 'the fairness of an agreement's actual terms' [citation], focusing on whether the contract will create unfair or one-sided results [citation]." (*Ramirez, supra*, 16 Cal.5th at p. 493.) Substantively "[u]nconscionable terms '"impair the integrity of the bargaining process or otherwise contravene the public interest or public policy"' or attempt to impermissibly alter fundamental legal duties. [Citation.] They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 130 (*OTO*).)

## II.

### THERE WAS AMPLE EVIDENCE OF
### PROCEDURAL UNCONSCIONABILITY

To start, the contract was adhesive. Newport Healthcare, the party with superior bargaining power, presented Velarde with the agreement on a preprinted form and explained she had to sign it, even though she did not want to, or she could not begin working.

In addition, Newport Healthcare pressured Velarde into agreeing to arbitration by presenting her with the agreement, alongside 30 other documents, to review and sign while its HR manager stood and waited. Thus, Velarde had little to no time to review the terms of the agreement. And the terms she could review would not be readily meaningful to a lay person. For example, the agreement referenced the FAA, the Federal Rules of Evidence, the Federal Rules of Civil Procedure, and the American Arbitration Association Employment Arbitration Rules. It is unlikely a lay person has ever heard of the FAA or any of these rules, let alone has a working knowledge of their terms. This is not to say a party must consult with an attorney before executing an arbitration agreement containing references to the panoply of applicable laws. But Newport Healthcare's conduct here deprived Velarde of having a meaningful opportunity to reflect and decide for herself if she wanted to speak to an attorney or conduct her own research prior to signing.

Of further concern to this court is the fact Newport Healthcare misrepresented the terms and nature of the agreement. Velarde explicitly told the HR manager she did not understand what the agreement meant. In response, the HR manager misinformed Velarde that the agreement would give Newport Healthcare the power to resolve all disputes between it and Velarde without either party having to pay for lawyers. This was manifestly untrue, as the agreement required the parties to resolve all covered disputes in an adversarial arbitration before an arbitrator in which all parties would bear their own attorney fees. We do not mean to suggest the HR manager intentionally misled Velarde. The misinformation may have been given out of negligence, ignorance, or inadvertence. But we focus on the effect, not the intent.

The facts of this case demonstrate Velarde's execution of the document was not the product of a "voluntary or informed agreement to its terms." (*OTO, supra*, 8 Cal.5th at p. 129.) On this record we have little doubt concluding Velarde did not understand the nature of what she was agreeing to or the rights she was foregoing.

## III.

### BECAUSE THE AGREEMENT DID NOT CONFORM TO VELARDE'S EXPECTATIONS, THERE IS SUBSTANTIVE UNCONSCIONABILITY

Even in situations like this one where there is so much procedural unconscionability that a party likely did not understand what they were signing, that factor "alone [will] not render [the] agreement unenforceable. There must also be some measure of substantive unconscionability." (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1471.) But "[s]ubstantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive." (*OTO, supra*, 8 Cal.5th at p. 130.)

*OTO* is instructive. There, an employer hired an employee to work as a service technician. (*OTO, supra*, 8 Cal.5th at p. 118.) Three years after his employment began, an HR "'porter'" approached the employee in his workstation and asked him to sign several documents, which he was required to sign and immediately return to the porter, who waited in the workstation. (*Ibid.*) The employee had no opportunity to review the documents, and the porter did not explain their contents. (*Ibid.*) One document was an arbitration agreement which mandated that the parties submit all disputes to arbitration before a retired judge pursuant to the California Arbitration Act. (*Id.* at p. 119.) The agreement gave each party the right to conduct

discovery and engage in motion practice pursuant to the Code of Civil Procedure and also required the parties to follow all California rules of pleading and evidence. (*Ibid.*)

Following the employee's termination, he filed a complaint with the Labor Commissioner for unpaid wages. (*OTO, supra*, 8 Cal.5th at p. 119.) The employee requested a Berman hearing,[1] but the employer filed a petition to compel arbitration and stay the administrative proceedings. (*Id.* at p. 120.) The hearing officer refused to stay the proceedings and issued an award in the employee's favor. (*Ibid.*) The employer, as per the administrative procedures, sought review in the trial court and argued the matter should have been submitted to arbitration. (*Ibid.*) The trial court disagreed concluding the agreement was unconscionable because it required the employee to give up the "'speedy, informal and affordable method of resolving wage claims'" afforded by the Berman hearing without giving anything comparable in return. (*Ibid.*) The Court of Appeal reversed holding that although there was a high degree of procedural unconscionability, the agreement was not substantively unconscionable. (*Ibid.*) That court reasoned there were "no objectionable terms" nor was the agreement ""harsh or one-sided."" (*Ibid.*) The California Supreme Court reversed.

The Supreme Court noted there was ample evidence of procedural unconscionability. "The sentences [were] complex, filled with statutory references and legal jargon." (*OTO, supra*, 8 Cal.5th at p. 128.) The employer presented the agreement to the employee in his workspace and required him to sign it to keep his job. (*Id.* at p. 127.) Further, no one

_____

[1] A "Berman hearing" refers to the administrative procedure for the recovery of unpaid wages. (*OTO, supra*, 8 Cal.5th at p. 121.)

9

explained the contents of the agreement to him. (*Ibid*.) And because the porter was waiting, the employee was pressured to sign it quickly without having an opportunity to consult an attorney. (*Ibid*.)

Turning to substantive unconscionability, the California Supreme Court held that, in the context of the case, the waiver of the employee's right to a Berman hearing rendered the agreement unenforceable. (*OTO, supra*, 8 Cal.5th at p. 133.) The Supreme Court explained that the purpose of a Berman proceeding is to provide an employee with "a 'speedy, informal, and affordable method' for resolving wage disputes." (*Id*. at p. 132.) To initiate such a claim, an employee need only fill out a complaint form, attend a settlement conference, and, if necessary, a hearing. (*Id*. at p. 131.) But what the employee actually agreed to was far from these informal and inexpensive procedures. Instead, the arbitration agreement "incorporate[d] the intricacies of civil litigation." (*Id*. at p. 133.) This included the requirement to draft a formal complaint in a legal pleading, propound and respond to discovery, and conduct motion practice. (*Id*. at p. 131.) This not only deprived the employee of a quick and informal resolution but rendered the process costly as the employee would likely need to hire counsel. (*Id*. at p. 134.)

In reaching its decision, the California Supreme Court stressed that "the waiver of [the] Berman procedures does not, in itself, render an arbitration agreement unconscionable." (*OTO, supra*, 8 Cal.5th at p. 130.) Neither does requiring parties to adhere to the strictures of civil litigation. (*Id*. at p. 136.) But substantive unconscionability analyses "must be sensitive to context." (*Ibid*.) "Although the same contract terms might pass muster under less coercive circumstances, a worker who is required to trade the Berman process for arbitration should at least have a reasonable opportunity to understand the bargain he is making." (*Ibid*.)

10

Turning to the facts of this case, we begin by noting the evidence of procedural unconscionability is greater than it was in *OTO*. As in *OTO*, Newport Healthcare did not give Velarde meaningful time to review the agreement or to consult with counsel. Newport Healthcare pressured and required her to sign it immediately as a condition of her employment. But, of significance here, a fact which was not present in *OTO*, Newport Healthcare expressly misled Velarde as to the nature and the terms of the agreement.

Newport Healthcare told Velarde the agreement would allow them to resolve any issues without either side having to pay lawyers. That conveyed the expectation Velarde could resolve any claimed violation of her rights in an inexpensive, speedy, and informal manner. This may have been important to Velarde given that she had been unemployed for nine months, having been laid off from her prior job due to the pandemic. But the procedures set forth in the arbitration agreement were not likely to result in an inexpensive, speedy, and informal resolution of her claims. Instead, Velarde would have any claimed violation of her rights submitted to an adversarial arbitration process where Newport Healthcare had "the right to conduct discovery as permitted by the Federal Rules of Civil Procedure . . . ." Thus, the agreement did not match up with Velarde's reasonable expectations given what was expressly conveyed to her.

Additionally, the terms of the agreement placed Velarde in a disadvantageous position. It is unlikely a lay person, inexperienced in the nuances of employment law, would be able to navigate the procedural complexities of the Federal Rules of Civil Procedure to obtain the discovery needed to vindicate their rights; let alone be able to then journey through the Federal Rules of Evidence so they could admit that discovery during arbitration. It is much more likely Newport Healthcare, a nationwide

11

corporation, had an attorney available who could navigate those complexities for it. Given these circumstances, the terms of the agreement are so one-sided as to benefit only Newport Healthcare.

Velarde might have decided not even to contact an attorney, erroneously thinking that Newport Healthcare would not be using one. Even assuming Velarde could take the critical step of hiring a lawyer to assist her, the agreement made clear she would be responsible to pay their fees. There is, of course, nothing inherently unconscionable about this. But it was made unconscionable by Newport Healthcare telling Velarde she would neither need an attorney nor have to pay for one.

Taken in isolation, like in *OTO*, "the arbitration process here is no more complicated than ordinary civil litigation . . . ." (*OTO, supra*, 8 Cal.5th at p. 136.) But we do not analyze unconscionability in a vacuum; we "must be sensitive to context" as well as any procedural unconscionability in the formation of the agreement. (*Ibid.*) We have no doubt the same "contract terms might pass muster under less coercive circumstances . . . ." (*Ibid.*) Had Newport Healthcare either correctly explained the terms of the agreement, or had not explained them at all, and had given Velarde a reasonable opportunity to review the agreement and to consult counsel, "this would be a different case." (*Ibid.*) But that is not what happened here.

## DISPOSITION

We affirm the order denying Appellants' motion to compel arbitration. Respondent is to recover her costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


MOTOIKE, J.